John J. Hebert (#010633)
Philip R. Rudd (#014026)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART PC**
3636 North Central Avenue, Suite 1200
Phoenix, AZ 85012
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-mail: PhoenixBankruptcyECF@polsinelli.com
E-Mail: jhebert@polsinelli.com
E-Mail: prudd@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for Debtors*

# IN THE UNITED STATES BANKRUPTCY COURT

# THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>RCC SOUTH, LLC<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:10-BK-23475-SCC<br><br>**MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL** |

RCC South, LLC ("Debtor"), debtor and debtor-in-possession herein, by and through undersigned counsel, pursuant to 11 U.S.C. §363(c) and Rules 4001(b) and 9014, Federal Rules of Bankruptcy Procedure, hereby requests that the Court enter its order authorizing the Debtor to use its cash, the rents, and other income generated by the Debtor's property to pay for the Debtor's ordinary and necessary operating and reorganization expenses as set forth in the proposed ninety (90) day budget attached hereto as Exhibit "A" (the "Budget"). In support of this "Motion for Authorization to Use Cash Collateral" ("Cash Collateral Motion"), the Debtor states as follows:

## **JURISDICTION AND VENUE**

This Court has jurisdiction over this case pursuant to 28 U.S.C. §1334. The subject matter of this motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper under 28 U.S.C. § 1408.

**FACTUAL BACKGROUND**

1. The Debtor is a Delaware limited liability company authorized to do and doing business in the State of Arizona.

2. The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, on July 27, 2010 (the "Petition Date").

3. The Debtor is operating its business and managing its assets as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.[1]

4. The Debtor owns and operates two Class "A" office buildings and the related corporate campuses known as Phase III and Phase IV of the Raintree Corporate Center located on the northeast corner of Loop 101 (Pima Freeway) and Raintree Drive, at 8800 East Raintree Drive and 8888 East Raintree Drive, respectively, in Scottsdale, Arizona (the "Property"). Phase III of the Property consists of approximately 168,067 square feet, while Phase IV of the Property consists of approximately 176,823.

5. Phase III of the Property is currently occupied by 23 tenants in approximately 122,974 square feet of the building. Thus, Phase III of the Property is approximately 73% occupied.

6. Phase IV of the Property is currently occupied by 4 tenants in approximately 95,502 square feet of the building. Thus, Phase IV of the Property is approximately 54% occupied.

7. The Property is managed by Cavan Management Services, LLC, a well-respected, established manager of commercial real properties throughout the Valley.

8. iStar FM Loans, LLC ("iStar") has asserted a claim against the Debtor, allegedly secured by the Property, in the amount of approximately $76,708,398.

9. On or about July 21, 2010, iStar delivered a demand to the Debtor's tenants directing that rents be paid to iStar directly.

10. Despite the Debtor's best efforts to negotiate a resolution of iStar's asserted claims against the Debtor, the Debtor was unable to reach an agreement with iStar and filed its voluntary

---

[1] Unless otherwise indicated, all references to code sections herein shall be to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

2

2717444.1

petition for relief on the Petition Date in order to reorganize and restructure its debts and liabilities for the benefit of all parties-in-interest.

11. In order to continue operating and maintaining the Property during the pendency of this Chapter 11 case for the benefit of all creditors and parties-in-interest, it is necessary for the Debtor to use its cash and the rental and other income from the Property to pay for the ordinary and necessary operating and reorganization expenses of the Property and the Debtor.

12. The Debtor's projected income and expenses for the next ninety (90) days (i.e., through October 2010) are identified in the Budget that is attached hereto as Exhibit "A."

13. As reflected in the Budget, the Debtor's income includes base rental income from tenants of the Property, parking rent, rooftop rent, business center revenue, common area maintenance income, and utility reimbursement income (collectively, when combined with current cash-on-hand, the "Income").

14. Also as reflected in the Budget, the Debtor's expenses include utility expenses, maintenance, janitorial and repair expenses, ordinary and customary property management fees, ordinary and customary asset management fees, United States Trustee's fees, and certain bankruptcy related professional fees (which, of course, will not be paid absent an appropriate order of this Court) (collectively, the "Expenses"). The Expenses in the Budget also include a modest miscellaneous expense line item to allow the Debtor certain flexibility in connection with the operational expenses of the Property.

15. The Debtor's management believes that the value of the Property is not declining, and, so long as the Expenses are paid, will not diminish in the immediate future.

16. Upon information and belief, iStar asserts a lien in the rental and other income generated by the Property, and contends that such income constitutes its "cash collateral" as defined in 11 U.S.C. §363. The Debtor has not had sufficient time to determine the validity, priority, enforceability, and/or extent of iStar's asserted lien. Accordingly, the Debtor reserves all rights with respect thereto.

17. No formal creditor's committee has yet been formed.

3

2717444.1

18. The Debtor proposes to use the Income to pay the Expenses in accordance with the Budget, with a ten percent (10%) variance of the total Budget.

19. It is crucial for the Debtor to have the use of the Income to operate, maintain and preserve the Property in order to, among other things, (a) maintain tenant relations and comply with its obligations as a landlord to the Property's tenants, (b) continue marketing the Property to prospective tenants in order to improve the Property's cash flow, and (c) preserve the going concern value of the Property while the Debtor formulates and implements a plan of reorganization.

20. The Debtor believes that its business operations and reorganization efforts will suffer immediate and irreparable harm if it is not allowed to use the Income to pay the Expenses. Indeed, the value of the Property will decline if the Expenses are not paid.

21. To the extent that the Property generates Income in excess of the Expenses, as the Budget reflects, the Debtor will hold and sequester such excess Income, subject to whatever rights iStar has in the Income pursuant to its liens.

## LEGAL ANALYSIS

Pursuant to 11 U.S.C. §363(c)(2), the Debtor may use cash collateral if the entity holding an interest in such cash collateral consents or, if after notice and a hearing, the Court authorizes its use. Where an entity objects to the use of cash collateral, the Court still may permit its use by the Debtor upon a showing that the rights of the objecting party are adequately protected. 11 U.S.C. §363(e); *See* COLLIER ON BANKRUPTCY §363.04, 15th Ed., 1989.

Section 361 of the Bankruptcy Code specifies three means of proving adequate protection; however, as indicated in the legislative history to that section, such means are "neither exclusive nor exhaustive." Generally, the "interest in property sought to be protected under Code § 361 is the value of the secured creditor's collateral during the interim period between the filing of the petition and confirmation of a plan of reorganization, or dismissal of the case." *In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. 53, 57 (Bankr. N.D.N.Y. 1992) (citation omitted).

Thus, courts have consistently found that a debtor's use of cash collateral to pay the reasonable and necessary operating expenses of the debtor's property, by itself, satisfies the

2717444.1

"adequate protection" requirement of § 363(c)(2). *See e.g. In re R&G Properties, Inc.*, 2009 WL 2043875 at *6 (Bankr. D. Vermont 2009) (and cases cited therein); In re Princeton Square Associates, L.P., 201 B.R. 90, 96 (Bank S.D.N.Y. 1996) ("The use of rents by a debtor in possession to maintain the property to the same extent that receiver of rents would use the rents does no economic harm to the lender . . . . Adequate protection is required for the 'use' of the secured creditor's collateral. In the context of rents, this court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents."); *In re 499 W. Warren Street Associates, Ltd. Partnership*, 142 B.R. at 56-57 ("Under appropriate circumstances, use of a portion of the rental income to pay the reasonable and necessary operating expenses of the property satisfies [the adequate protection requirement].").

Here, iStar is protected from any risk by the use of the Income to pay the Expenses. The use of the Income to operate and maintain the Property will protect iStar's interest in the Property and will protect against a decrease in the value of the Property. Therefore, iStar is adequately protected, and the Debtor should be permitted to use the Income from the Property to pay the Property's and the Debtor's Expenses associated with maintaining, preserving and improving the Property.

Based on the foregoing, the Debtor respectfully requests that the Court enter its order authorizing the Debtor to use the Income to pay the Expenses in accordance with the Budget, with a ten percent (10%) variance, for the next ninety (90) days, with the right to seek additional use of the Income after the expiration of such period.

RESPECTFULLY SUBMITTED: July 29, 2010.

POLSINELLI SHUGHART PC

By: /s/ Wesley D. Ray
John J. Hebert
Philip R. Rudd
Wesley D. Ray
3636 N. Central Ave., Suite 1200
Phoenix, AZ  85012

*Attorneys for Debtors*

5

2717444.1

| | | |
|---|---|---|
| 1 | **COPY** of the foregoing mailed (or served via electronic notification if indicated by an "*") | |
| 2 | on July 29, 2010, to: | |
| 3 | U.S. TRUSTEE'S OFFICE | Susan G. Bowell * susan.boswell@quarles.com |
|   | 230 N. 1st Avenue, Suite 204 | QUARLES & BRADY LLP |
| 4 | Phoenix, AZ 85003 | One South Church Ave., Suite 1700 |
|   |  | Tucson, AZ 85701-1621 |
| 5 |  | *Attorneys for iStar FM Loans LLC* |
| 6 | Peter A. Siddiqui * peter.siddiqui@kattenlaw.com | Those parties to be included in the List of Top |
|   | KATEN MUCHIN ROSENMAN LLP | 20 Creditors |
| 7 | 525 W. Monroe Street | |
|   | Chicago, IL 60661-3693 | |
| 8 | *Attorneys for iStar FM Loans LLC* | |

By: _____/s/  Diane Ashworth_____

2717444.1

# EXHIBIT A

**RCC South, LLC**
**Draft Cash Flow Budget**
**For the Operating Period August 1, 2010 Through October 31, 2010**

| | August Budget | September Budget | October Budget |
|---|---:|---:|---:|
| **Income** | | | |
| Base Rent | 404,509 | 426,059 | 426,059 |
| Parking Rent | 16,000 | 16,000 | 16,000 |
| Rooftop Rent | 500 | 500 | 500 |
| Business Center & Other Revenue | 6,300 | 6,300 | 6,300 |
| CAM Charges | 7,000 | 7,000 | 7,000 |
| Utilities Reimbursements - After Normal Bus Hours | 7,000 | 7,000 | 7,000 |
| Total Income | 441,309 | 462,859 | 462,859 |
| | | | |
| **Operating Expenses** | | | |
| Electricity | 57,000 | 56,500 | 56,000 |
| Water/Sewer | 3,600 | 3,500 | 3,300 |
| Natural Gas/Fuel Oil | 75 | 75 | 75 |
| Refuse Removal | 800 | 800 | 800 |
| Access Control Systems | 250 | 250 | 250 |
| Elevator - Maintenance Contract | 3,500 | 225 | 225 |
| Elevator - Phones | 600 | 250 | 250 |
| Energy Management System | 2,600 | 850 | 2,600 |
| Exterminating-Intr & Extr | 175 | 175 | 1,400 |
| Fire Protection Systems | 1,200 | 1,200 | 1,200 |
| HVAC - Maintenance Contract | 1,450 | 1,450 | 1,450 |
| HVAC - Supplies/Filters | 1,200 | 200 | 200 |
| Janitorial - Contract | 12,500 | 12,500 | 12,500 |
| Janitorial - Supplies & Maintenance | 2,300 | 2,300 | 2,300 |
| Lighting - Supplies | 600 | 600 | 600 |
| Locks & Keys | 225 | 225 | 225 |
| Parking Garage Expenses | 18,500 | 18,500 | 18,500 |
| Common Area Plants | 375 | 375 | 375 |
| Maintenance Engineering Dept - Labor | 11,500 | 11,500 | 11,500 |
| Window Washing Maintenance | 325 | 325 | 5,000 |
| Property Management Fees (3% of Revenue) | 13,239 | 13,886 | 13,886 |
| Security Contract | 6,300 | 7,800 | 6,300 |
| Landscape - Maintenance Contract | 3,200 | 3,200 | 3,200 |
| Parking Lots - Sweeping | 150 | 150 | 150 |
| Association Fees | 1,500 | 1,500 | 1,500 |
| US Trustee Fees | | | 4,875 |
| Property Tax Appeal Fees | 500 | | |
| Miscellaneous Expenses | 2,000 | 2,000 | 2,000 |
| Repairs & Building Maintenance | 23,155 | 9,905 | 9,905 |
| Total Operating Expenses | 168,819 | 150,241 | 160,566 |
| | | | |
| Net Cash Flow | 272,490 | 312,618 | 302,293 |

# EXHIBIT A

**RCC South, LLC**
**Repairs & Maintenance Detail**
**For the Operating Period August 1, 2010 Through October 31, 2010**

|  | August Budget | September Budget | October Budget |
|---|---:|---:|---:|
| Doors, Hardware, Frames | 650 | 650 | 650 |
| Electrical - Regular | 600 | 600 | 600 |
| Electrical - Infrared Testing & Repairs | 2,300 | | |
| Elevator - Repairs | 400 | 400 | 400 |
| Energy Management System Repairs | 100 | 100 | 100 |
| HVAC - Repairs | 8,750 | 1,500 | 1,500 |
| HVAC - Cooling Towers Rep | 500 | 500 | 500 |
| Lighting Repairs & Maintenance | 550 | 300 | 300 |
| Plumbing R&M Modifications | 400 | 400 | 400 |
| Roof & Structural Repairs | 375 | 375 | 375 |
| Security - Equipment Camera Monitoring Repairs | 400 | 400 | 400 |
| Supplies & Materials | 275 | 275 | 275 |
| Interior Repairs and Maintenance - Normal | 2,000 | 750 | 750 |
| Miscellaneous | 600 | 600 | 600 |
| Landscape - Add'l Supplies | 275 | 275 | 275 |
| Tree Trimming - Etc | 600 | 600 | 600 |
| Directory Signage | 180 | 180 | 180 |
| Architect Fees - Prospective Tenant Floor Plan Designs | 4,200 | 2,000 | 2,000 |
| | 23,155 | 9,905 | 9,905 |