Quarles & Brady LLP
Firm State Bar No. 00443101
One South Church Avenue, Suite 1700
Tucson, Arizona 85701-1621
Telephone 520.770.8713
Facsimile 520.770.2222
SUSAN.BOSWELL@QUARLES.COM

Susan G. Boswell (AZ Bar #004791)

Attorneys for iStar FM Loans LLC

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>RCC SOUTH, LLC,<br><br>Debtor. | In Proceedings Under Chapter 11<br><br>Case No. 2:10-bk-23475-SSC<br><br>**LIMITED OBJECTION TO DEBTOR'S MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL**<br><br>Hearing date: August 12, 2010<br>Time: 1:30 p.m.<br>Location: Courtroom 701<br>230 N. First Avenue<br>Phoenix, Arizona 85003 |

Senior, secured creditor and party-in-interest iStar FM Loans LLC ("iStar") hereby submits its limited objection to the "Motion for Authorization to Use Cash Collateral" [Docket No. 12] (the "Motion") filed in the above-captioned Chapter 11 bankruptcy case by RCC SOUTH, L.L.C. (the "Debtor"). The Motion requests that the Court authorize the Debtor's nearly unfettered use of iStar's cash collateral without iStar's consent, and fails to adequately protect iStar's interest in the cash collateral as required by 11 U.S.C. § 363(e). Although iStar does not generally object to the Debtor's limited use of cash collateral to operate the premises and fund an agreeable budget, the Debtor must demonstrate that iStar's interest in the cash collateral will be

QB\138887.00002\11026357.2

adequately protected. The Debtor has provided no evidence, affidavits, or other support that it is providing any adequate protection to iStar whatsoever. Accordingly, iStar cannot and does not consent to the Debtor's use of cash collateral as requested in the Motion. However, as detailed below, with the conditions outlined below and upon a showing of meaningful adequate protection, iStar would be willing to consent to the Debtor's use of iStar's cash collateral.

## I. **INTRODUCTION**

The Debtor is the developer of a real estate project that was financed with a short-term loan extended in 2006. That loan, with an outstanding balance of more than $69,000,000, has matured, and the Debtor, unable to repay the loan, has filed a Chapter 11 petition to prevent its mortgage lender, iStar, from exercising its bargained-for remedies pursuant to state law and the Loan Documents (defined below).

In the time between loan origination and maturity, the Debtor constructed an office park consisting of two office buildings, and a parking structure that serves them. Although it did not check the box on its Chapter 11 petition so admitting, the Debtor is a classic single asset real estate debtor.[1] The office campus is managed by the Debtor's insider, Cavan Management Services, LLC ("Cavan"). Despite demand, neither Cavan nor the Debtor has provided iStar with any information about the Debtor's financial status since the end of March, 2010.

Now, having sought the protections of the Bankruptcy Code for itself, the Debtor seeks, through the Motion, to use the Cash Collateral (defined below) while denying iStar the protections the Bankruptcy Code and the Bankruptcy Rules grant iStar. These important protections are twofold: first, the Debtor must adequately protect iStar's economic interest, and second, the Debtor must provide iStar with information about the state of its collateral. *See* 11 U.S.C. § 363(c). The relief requested in the Motion denies iStar both of these protections. First, the Debtor refuses to grant any adequate protection of iStar's liens. Second, the Debtor ignores

---
[1] iStar will be filing a motion to have the Court determine that the Debtor is a single asset real estate debtor as defined in 11 U.S.C. § 101(51)(B).

any obligation to provide information in the Motion. While a budget is attached to the Debtor's Motion, the Debtor has provided limited information to iStar[2] with no explanation of the expenditures that occurred since March 2010, no reconciliation of the cash and no reliable detail and status of the Property's payables and receivables.[3] Moreover, through the Motion, the Debtor proposes to pay its insider, Cavan, the same amount Cavan received pre-petition. Yet at the same time, the Debtor proposes to withhold from iStar, its first-priority, secured creditor, every penny of its collateral—despite the Debtor's default, which is in excess of $69,000,000 and despite the fact that the Debtor should have accumulated a fair amount of iStar's Cash Collateral since it has made no payments to iStar since May, 2010.

While iStar understands the need to expend limited funds to protect and operate the Property, the Debtor's Motion is simply overreaching and deficient. The Bankruptcy Code requires that iStar's interests be adequately protected in the event the Debtor expends cash collateral in which iStar has an interest, and the Debtor cannot ignore that mandate. Therefore, to the extent the Debtor will agree to adequately protect iStar by complying with the conditions described below, iStar will agree to the Debtor's limited use of its Cash Collateral. However, in the event the Debtor persists in its refusal to comply with the Bankruptcy Code and the Bankruptcy Rules, the Court should enforce the Code's protections by ordering adequate protection of iStar's interests as requested herein as a condition to any use of Cash Collateral.

---

[2] It was only after the Debtor filed this case and needed to use Cash Collateral that it provided some limited information to iStar and then only upon iStar's request. If the Debtor wants to use Cash Collateral it should be transparent about all of the financial activity since it last reported to iStar in March 2010 and it iStar should not be required to request it and then have to keep requesting such information.

[3] Even though this case was filed on July 27, 2010, no statements or schedules have been filed nor did the Debtor provide any detailed information with the Motion regarding its creditors, the status of leases and payments from tenants, monies it is holding that it iStar's cash collateral or any other type of detailed information.

-3-

## II. FACTUAL AND PROCEDURAL BACKGROUND

1. The Debtor filed its voluntary Chapter 11 petition on July 27, 2010 (the "Petition Date"). Although it did not mark the appropriate box on its bankruptcy petition, the Debtor is a "single asset real estate" debtor pursuant to 11 U.S.C. § 101(51B).

2. The Debtor's sole business is to own and operate the Raintree Corporate Center Phases III and IV, which is a commercial office complex located at 8800 East Raintree Drive and 8888 East Raintree Drive Scottsdale, Arizona (the "Property"). A map showing the location of the Property is attached hereto at page 2 of Exhibit "A," which is the Debtor's leasing brochure.

3. Since the Petition Date, the Debtor has remained in possession of its property pursuant to Bankruptcy Code §§ 1107 and 1108.

4. The Debtor is obligated to iStar on a loan (the "Loan") made and assigned to iStar by its predecessor-in-interest, Fremont Investment & Loan ("Fremont") pursuant to that certain "Loan and Security Agreement" dated December 21, 2006 (the "Loan Agreement"), attached as Exhibit "A" to the "Appendix of Loan and Security Documents" (the "Appendix") filed by iStar in this matter. [Docket No. 7.] The Loan is secured by a valid, properly perfected first deed of trust lien on the Property and the stream of income from the Property, among other collateral.

5. The Loan is also evidenced by that certain Secured Promissory Note (the "Note") dated as of December 21, 2006, in the original principal amount of $79,000,000, by and between Fremont and the Debtor. A true and correct copy of the Note is attached as Exhibit "B" to the Appendix.

6. As security for the Loan and related obligations, the Debtor executed that certain Deed of Trust and Fixture Filing (the "Deed of Trust") dated as of December 21, 2006, under which Fremont was the original beneficiary. The Deed of Trust was properly recorded in the Official Records of the Maricopa County Recorder on December 21, 2006, as instrument number 20061668979. A true and correct copy of the Deed of Trust is attached as Exhibit "C" to the Appendix.

QB\138887.00002\11026357.2

7. As additional security for the Loan and related obligations, the Debtor also executed that certain absolute and unconditional Assignment of Rents (And Leases) (the "Assignment of Rents") dated as of December 21, 2006 in favor of Fremont. The Assignment of Rents was properly recorded in the Official Records of the Maricopa County on December 21, 2006, as instrument number 20061668980. A true and correct copy of the Assignment of Rents is attached as Exhibit "D" to the Appendix.

8. Fremont properly filed a UCC-1 Initial Financing Statement on December 26, 2006 with the Delaware Secretary of State, identified as document number 64524286. A true and correct copy of the Delaware Financing Statement is attached as Exhibit "F" to the Appendix.

9. Fremont also properly filed a UCC-1 Initial Financing Statement on December 27, 2006 with the Arizona Secretary of State, identified as document number 200614585816. A true and correct copy of the Delaware Financing Statement is attached as Exhibit "G" to the Appendix.

10. Collectively, the Loan Agreement, Note, Deed of Trust, Assignment of Rents, Assignment of Project Agreements, the UCC-1 Initial Financing Statements, and all related loan and security documents that may or may not be mentioned herein (including, but not limited to, the Assignment and Assumption and amended Financing Statements (described below) are referred to herein as the "Loan Documents."

11. By virtue of that certain Assignment and Assumption of Notes, Mortgages and Other Loan Documents (the "Assignment and Assumption") dated as of June 29, 2007, by Fremont as assignor in favor of iStar as assignee, iStar acquired all rights and interests of Fremont as lender under the Loan Documents. The Assignment and Assumption was properly recorded in the Official Records of the Maricopa County on July 9, 2007, as instrument number 20070776955. A true and correct copy of the Assignment and Assumption is attached as Exhibit "H" to the Appendix.

QB\138887.00002\11026357.2

12. iStar's interest is also perfected by virtue of that certain UCC Financing Statement Amendment filed on July 6, 2007 with the Arizona Secretary of State, evidencing an assignment of Initial Financing Statement # 200614585816. A true and correct copy of the Amended Arizona Financing Statement is attached as Exhibit "I" to the Appendix.

13. iStar's interest is further perfected by virtue of that certain UCC Financing Statement Amendment filed on July 6, 2007 with the Delaware Secretary of State, evidencing an assignment of Initial Financing Statement # 64524286. A true and correct copy of the Amended Delaware Financing Statement is attached as Exhibit "J" to the Appendix.

14. In Section 7.12 of the Loan Agreement, the Debtor covenanted, among other things, that it "(a) shall not engage or be authorized to engage in any business unrelated to the Project, [and] (b) shall not have assets other than those related to its interest in the Project,". *See* Loan Agreement at ¶ 7.12, Exhibit "A" to the Appendix. Thus the Debtor has already agreed that it is a single asset real estate.

15. By virtue of the Loan Documents, iStar's collateral includes but is not limited the Property and an assignment of and interest in and to all present and future leases of the Property, and all present and future rents, revenues, income, issues, royalties, profits and other benefits derived from the Property. These present and future rents, revenues, income, issues, royalties, profits and other benefits derived from the Property, among other categories of items set forth in 11 U.S.C. § 363(a), constitute iStar's cash collateral (the "Cash Collateral"). *See Scottsdale Med. Pavilion v. Mut. Benefit Life Ins. Co. In Rehabilitation (In re Scottsdale Medical Pavilion)*, 159 B.R. 295, 301 (B.A.P. 9th Cir. 1993), *aff'd*, 52 F.3d 244 (9th Cir. 1995) (applying Arizona law, rents collected by a debtor pre-petition are subject to a secured creditor's lien under a deed of trust and assignment of rents, and accordingly such rental income constitutes cash collateral).

16. The Loan matured on July 1, 2010 (the "Maturity Date"). In addition to payment defaults, among other defaults (including nonpayment of real estate taxes), that occurred prior to

QB\138887.00002\11026357.2

the Maturity Date, the Debtor further defaulted by not paying iStar amounts due and owing on the Maturity Date.

17. Until last week when the Debtor apparently realized that it could not continue to operate without providing information to iStar (and ultimately the Court), the Debtor had failed to provide iStar any accounting of income and expenses since March. The information that has now been provided is incomplete and limited.

18. Moreover, the Debtor has now requested an extension of time to file its Statements and Schedules which means that meaningful information by which iStar and the Court can determine, among other things, what is actually owed to creditors, to whom and how much,[4] the status of the leases, the amount of cash the Debtor had on the Petition Date, payments made or other disposition of cash prior to the Petition Date, and other financial information.

## III. LEGAL ARGUMENT.

Pursuant to 11 U.S.C. § 363(c)(2), the Debtor may not use iStar's Cash Collateral unless: (i) iStar consents to such use; or (ii) the Court enters an order authorizing the use of the Cash Collateral in accordance with the provisions of Bankruptcy Code § 363, which requires, among other things, that the Debtor segregate and account for any Cash Collateral in its possession, custody, or control. *See* 11 U.S.C. § 363(c)(2), (4). The Bankruptcy Code also requires that iStar's interests in the Cash Collateral be adequately protected. *See id.* § 363(e); *See also Scottsdale Med. Pavilion v. Mut. Benefit Life Ins. Co. In Rehabilitation (In re Scottsdale Medical Pavilion)*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993), *aff'd*, 52 F.3d 244 (9th Cir. 1995).

The adequate protection to which a secured creditor is entitled in the cash collateral context is the value of the secured creditor's interest in the cash collateral sought to be used. *In re McComb Prop.'s VI, Ltd*, 88 B.R. 261, 268 (Bankr. C.D. Cal. 1988). Examples of how the Debtor might provide such adequate protection are set forth in the Bankruptcy Code, and include (1)

---

[4] Based upon the list of 20 largest creditors, it would appear that there is very little owed to other creditors other than iStar. *See* "List Of Creditors Holding 20 Largest Unsecured Claims," Docket No. 15.

-7-

QB\138887.00002\11026357.2

periodic cash payments; (2) additional or replacement liens; and (3) providing the indubitable equivalent of the secured creditor's interest in the property. 11 U.S.C. § 361. The Debtor bears the burden of establishing that iStar's interests are adequately protected. *See* Bankruptcy Code § 363(p)(1); *In re Scottsdale Medical Pavilion*, 159 B.R. at 302. To meet this burden, the Debtor must produce evidence showing that its proposal for use of the Cash Collateral "protects [the] value [of the Cash Collateral] as nearly as possible against risks to that value consistent with the concept of indubitable equivalence." *In re McComb Prop.'s VI, Ltd*, 88 B.R. at 267.

In this case, the Debtor has failed to meet the burden of showing that iStar's collateral is adequately protected against diminution and risks to its value. The Debtor has not offered to provide any of the statutory adequate protection methods set forth in Section 361. Its facile assertion that "iStar is protected from any risk by the use of the Income to pay the Expenses" is both incorrect and insufficient to meet the Debtor's burden. The Debtor's unfettered use of cash to pay expenses that have not been approved by iStar cannot protect iStar from diminution in the value of its Cash Collateral, because the Debtor could expend the Cash Collateral on items that are neither necessary nor reasonable. Additionally, the Debtor intends to expend significant monies on a management fee paid to an insider - Cavan. The Debtor's insider should not be paid in full while creditors with senior priority go unpaid. Moreover, the Debtor has failed to account fully for the income and expenses from April through the Petition Date. Based upon information the Debtor provided to iStar, it would appear that the Debtor should be holding over $1 million of iStar's Cash Collateral at filing; however, the Debtor has told iStar that it only had approximately $269,000 in cash on the Petition Date. Such discrepancies and a full accounting of the cash should be explained before the Debtor is authorized to use Cash Collateral.

In addition, to provide adequate protection of iStar's interests in the Cash Collateral, the following minimum conditions are necessary:

- iStar must receive replacement liens to protect it against the reduction in value of its liens in the Cash Collateral;

- iStar must have the right to approve the Debtor's budget to ensure that only reasonable and necessary operating expenses will be paid;
- The Debtor must lower the management fee it proposes to pay to Cavan, its insider. iStar suggests that a flat fee of approximately $5,000 per month would be appropriate.
- The Debtor must pay all excess cash (the difference between income and payments of reasonable budgeted expenses approved by iStar) and all Cash Collateral held by the Debtor as of the Petition Date[5] to iStar, which will sequester the excess cash to be used to fund taxes and insurance obligations with respect to the Property[6] as well as to pay interest and principal.
- Additionally, iStar will re-advance excess cash paid to it to be used for tenant improvements required in conjunction with leases approved by iStar that comply with the requirements of the Loan Documents.
- The Debtor must immediately provide a full and complete accounting of its income and expenses for April, May, June, and July, 2010, including a reconciliation of cash and must provide an accounting at the end of each month for all future months subject to approval as to format and content of iStar.

---

[5] Since the Debtor cannot use the Cash Collateral without providing adequate protection to iStar and the Debtor is a single asset real estate Debtor with no assets other than those subject to the liens and security interests of iStar, there is no reason that the excess cash cannot and should not be paid to iStar. *Liberty Nat. Enter. v. Ambanc La Mesa Ltd. Partnership (In re Ambanc La Mesa Ltd. Partnership)*, 115 F.3d 650, 654 (9th Cir. 1997), *cert. denied*, 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998) ("The value of [the secured creditor's] secured claim for purposes of confirmation is the market value of real property plus the net amount of rents collected post-petition and pre-confirmation and subject to a deed of trust and assignment of rents."); *In re Arden Properties, Inc*. 248 B.R. 164, 168 (Bankr.D.Ariz. 2000) (holding that adequate protection payments to the secured creditor made from rents that are the secured creditor's collateral may not be deducted from the amount of the secured claim).

[6] iStar will impound the amounts necessary to meet the tax and insurance obligations and pay those directly to avoid the current situation where the Debtor did not pay certain real property taxes even though it clearly had the funds to do so, thereby further impairing iStar's interest in the Property.

QB\138887.00002\11026357.2

- The Debtor must provide evidence of payment of the real property and other taxes related to the Property and the Collateral and a detailed listing of any unpaid real property or other taxes.
- The Debtor must immediately provide an accurate and detailed aging report of accounts payable and accounts receivable.
- The Debtor must provide iStar with a copy of all monthly operating reports filed in the bankruptcy case, which must include a detail of budgeted to actual amounts received and expended, and a copy of the rent roll current as of each month.
- The Debtor must strictly comply with maintenance and operational requirements set forth in the Loan Documents so that the property is preserved against loss or diminution in value;
- The Debtor must strictly adhere to all covenants set forth in the Loan Documents, including, without limitation, those covenants (a) permitting iStar or any person designated by iStar to visit and inspect the Property; (b) providing for the types of leases and lease amendments the Debtor may enter into; (c) requiring the maintenance of insurance; and (d) requiring the maintenance of full and complete books of account and other records reflecting the results of operations, to which iStar shall have access upon reasonable notice;
- The Debtor must acknowledge and agree to the amount of iStar's claim, and the validity and priority of its liens and security interests as first priority liens that are subject to no claims or defenses; and
- iStar should be provided with a super-priority administrative claim to the extent that the adequate protection provided is not sufficient. *See* 11 U.S.C. § 507(b).

QB\138887.00002\11026357.2

In the event the Debtor agrees to abide by the foregoing conditions and comply with its other obligations under the Bankruptcy Code with respect to use of cash collateral and adequate protection, iStar will consent to the Debtor's use of Cash Collateral.

To the extent the Debtor has dissipated or otherwise used iStar's Cash Collateral since the Petition Date, iStar is entitled to a super-priority administrative claim pursuant to 11 U.S.C. § 507(b). *See Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.)*, 759 F.2d 1440, 1451 (9th Cir. 1985) (observing that "although not literally within the provisions of section 507, Owens-Corning's injury [based on unauthorized use of cash collateral] is clearly within its spirit and deserves to be remedied by granting its claim a superpriority").

## IV. CONCLUSION.

WHEREFORE, iStar respectfully requests this Court enter an Order:

A. To the extent the Order authorizes the Debtor's use of Cash Collateral, conditioning such use on the following terms and conditions:

    1. iStar must receive replacement liens to protect it against the reduction in value of its liens in the Cash Collateral;

    2. iStar must have the right to approve the Debtor's budget to ensure that only reasonable and necessary operating expenses will be paid;

    3. The Debtor must lower the management fee it proposes to pay to Cavan, its insider. iStar suggests that a flat fee of approximately $5,000 per month would be appropriate.

    4. The Debtor must pay all excess cash (the difference between income and payments of reasonable budgeted expenses approved by iStar) and all Cash Collateral held by the Debtor as of the Petition Date to iStar, which will sequester the excess cash to be used to fund taxes and insurance obligations with respect to the Property as well as to pay interest and principal.

-11-

QB\138887.00002\11026357.2

5. iStar will re-advance excess cash received from the Debtor to be used for tenant improvements required in conjunction with leases approved by iStar that comply with the requirements of the Loan Documents.

6. The Debtor must immediately provide to iStar a full and complete accounting of its income and expenses for April, May, June, and July, 2010, including a detailed and complete reconciliation of cash and must provide an accounting to iStar at the end of each month for all future months.

7. The Debtor must provide evidence of payment of the real property and other taxes related to the Property and the Collateral and a detailed listing of any unpaid real property or other taxes.

8. The Debtor must immediately provide a detailed aging report of accounts payable and accounts receivable.

9. The Debtor must provide iStar with a copy of all monthly operating reports filed in the bankruptcy case, which must include a detail of budgeted to actual amounts received and expended, and a copy of the rent roll current as of each month.

10. The Debtor must strictly comply with maintenance and operational requirements set forth in the Loan Documents so that the property is preserved against loss or diminution in value;

11. The Debtor must strictly adhere to all covenants set forth in the Loan Documents, including, without limitation, those covenants (a) permitting iStar or any person designated by iStar to visit and inspect the Property; (b) providing for the types of leases and lease amendments the Debtor may enter into; (c) requiring the maintenance of insurance; and (d) requiring the maintenance of full and complete books of account and other records reflecting the results of operations, to which iStar shall have access upon reasonable notice; and

QB\138887.00002\11026357.2

12. The Debtor must acknowledge and agree to the amount of iStar's claim, and the validity and priority of its liens and security interests as first priority liens that are subject to no claims or defenses;

B. Granting iStar a super-priority administrative claim in the amount of any Cash Collateral expended by the Debtor post-petition without iStar's or this Court's permission and a super-priority administrative claim which is otherwise allowable pursuant to 11 U.S.C. § 507(b); and

C. Granting iStar such other and further relief as the Court deems just and proper under the circumstances of these Chapter 11 cases.

RESPECTFULLY SUBMITTED this 11th day of August, 2010.

QUARLES & BRADY LLP
One South Church Avenue, Suite 1700
Tucson, Arizona 85701


By  /s/ Susan G. Boswell
　　　Susan G. Boswell

Attorneys for iStar FM Loans LLC

COPIES of the foregoing sent via
electronic or First Class U.S. mail
this 11th day of August, 2010, to:

RCC South, LLC
15333 N. Pima Road, Suite 305
Scottsdale, AZ 85260
Debtor

John J. Hebert, Esq.
POLSINELLI SHUGHART, P.C.
3636 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
jhebert@polsinelli.com
Attorneys for Debtor

-13-

QB\138887.00002\11026357.2

| | |
|---|---|
| 1 | Elizabeth C. Amorosi, Esq.<br>United States Trustee |
| 2 | 230 N. First Avenue, Suite 204<br>Phoenix, AZ 85003-1706 |
| 3 | elizabeth.c.amorosi@usdoj.gov |
| 4 | |
| 5 | */s/ Kelly Webster* |

Quarles & Brady LLP

QB\138887.00002\11026357.2