1
2
3
4
5
6
7
8

9 **IN THE UNITED STATES BANKRUPTCY COURT**

10 **FOR THE DISTRICT OF ARIZONA**

11    In re: | In Proceedings Under Chapter 11

12 | Case No. 2:10-bk-23475

13    RCC SOUTH, LLC, | **STIPULATED ORDER AUTHORIZING DEBTOR'S USE OF**

14 | **CASH COLLATERAL, GRANTING POST-PETITION LIENS, MODIFYING**

15          Debtor, | **AUTOMATIC STAY, AND GRANTING RELATED RELIEF**

16

17

18      This matter came before the Court pursuant to the "Motion for Authorization to Use Cash

19 Collateral" [Docket No. 12] (the "Motion") filed by RCC South, LLC (the "Debtor"), the debtor

20 and debtor-in-possession in the above-captioned Chapter 11 case. In the Motion, and pursuant to

21 section 363 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the

22 "Bankruptcy Code"), the Debtors request authority to use certain cash and cash equivalents

23 asserted to be "cash collateral" security for repayment of certain obligations asserted to be owing

24 to iStar FM Loans LLC ("iStar"). iStar filed a "Limited Objection to Debtor's Motion for

25 Authorization to Use Cash Collateral" [Docket No. 38] (the "Objection"), protesting the Debtor's

26 use of the asserted cash collateral unless certain terms and conditions, that would attempt to

provide adequate protection for iStar, were ordered.  The Court conducted a hearing on the matter on August 12, 2010, at which time the parties requested the Court allow them additional time to work out a stipulated order providing for both the Debtor's use of the asserted cash collateral and protection for iStar.  At the next scheduled hearing, on August 26, 2010, the parties announced that they had reached agreement on the terms of a stipulated order.  Thereafter, to resolve their differences, and to induce iStar to consent to the Debtor's use of the asserted cash collateral as described herein, the Debtor and iStar submitted this agreed form of Order to the Court.

Based upon the Motion, the Objection, the agreement of the parties, and good and sufficient cause appearing therefore,

**THE COURT FINDS AND CONCLUDES** as follows:

A.      On July 27, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with this Court, commencing the above-captioned case (the "Bankruptcy Case").  The Debtor remains in possession of its property, operating and managing its business, as a debtor-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108.

B.      This Court has jurisdiction over the Bankruptcy Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion presents a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.      The Debtor owns certain real property commonly known as Phase III and Phase IV of the Raintree Corporate Center, which consists of two office buildings, a parking structure, and undeveloped land (the "Property").

D.      The Debtor is a single asset real estate debtor as defined in § 101(51B) of the Bankruptcy Code, and the provisions of 11 U.S.C. § 362(d)(3) are therefore applicable to the Debtor.

E.      Subject to paragraph 25, below, the Debtor acknowledges that it is obligated on a loan owing to iStar (the "Loan").  All loan documents evidencing, securing or

relating to the Loan shall be referred to collectively herein as the "Loan Documents." True and correct copies of the Loan Documents are part of iStar's "Appendix of Loan and Security Documents." [Docket Number 11.]

F.    Pursuant to the Loan Documents, iStar asserts that the Debtor is obligated to repay iStar the aggregate amounts of principal, interest, fees, and other costs owing under the Loan Documents (the "Obligations"). iStar asserts that as of July 22, 2010, the total amount of the Obligations was at least $76,708,398.75, of which $68,507,487.39 constitutes principal, $1,260,488.10 constitutes interest, $6,939,225.38 constitutes late charges, and $1,797.88 constitutes other fees and costs; the amount also includes a $600 credit arising from a deposit the Debtor placed with iStar.

G.    Subject to Paragraph 25, below, as security for repayment of the Obligations, iStar holds first priority valid, perfected, and enforceable security interests and liens in and upon the Property and personal property of the Debtor and such other collateral described in the Loan Documents (collectively, the "Collateral").

H.    The Collateral includes, among other things, rents and other revenues arising out of operation of the Property, and other cash and cash equivalent proceeds, which are "cash collateral" within the meaning of Bankruptcy Code § 363(a). The Collateral that constitutes cash collateral shall be referred to herein as the "Cash Collateral." Subject to paragraph 25, below, the Cash Collateral also secures repayment of the Obligations owing from the Debtor to iStar.

I.    Subject to paragraph 25, below, the Debtor acknowledges and agrees that the Cash Collateral is part of iStar's security.

J.    Subject to 11 U.S.C. § 506(b), interest continues to accrue on the Obligations at the rate of interest set forth in the Loan Documents.

K.    The Loan matured and became fully due and payable by its terms pre-petition. In addition, pre-petition, the Debtor defaulted on repayment of the Obligations, and

-3-

other terms and covenants of the Loan Documents.

L.    Pre-petition, the Debtor retained Cavan Management Services, LLC ("Cavan") as its property manager. Cavan is an insider of the Debtor as defined in 11 U.S.C. § 101(31).

M.    During July, 2010, the Debtor pre-paid certain fees and costs to Cavan, including "asset management fees, property management fees, engineering costs, and insurance premiums" that were not due or payable until various dates between September, 2010 and January, 2011. *See* Statement of Financial Affairs, attachments labeled "SoFA 3-B." [Docket No. 32.] These payments (excluding insurance premiums), total at least the amount of $235,000 (the "Prepaid Fees"). To the extent that (i) any insurance premiums were prepaid to Cavan, and (ii) the Debtor, not Cavan, is the party responsible for paying insurance premiums, the Debtor will offset the amount of any such insurance premiums from the property management fee it would otherwise remit to Cavan for September and October 2010.

N.    Cavan has agreed to, and as of August 30, 2010 has, returned the Prepaid Fees in the amount of $235,000 to the Debtor's debtor-in-possession account.

O.    As a result of the Debtor's defaults under the Loan Documents, iStar exercised its rights under the Loan Documents and put the tenants occupying the Property on notice that they should pay the monthly rental and associated payments (the "Tenant Payments") to iStar and not to the Debtor or any other party associated with the Debtor.

P.    Post-petition, iStar received $55,184.98 in Tenant Payments which it continues to hold as of the date of this Order (the "Retained Tenant Payments").

Q.    The Debtor has represented and warranted that as August 30, 2010 it holds the amount of $870,594.59 which is Cash Collateral, of which $274,202.44 was held by the Debtor on the Petition Date and the balance was collected by the Debtor after the Petition Date.

2737191.2

R.      The Debtor has requested that iStar consent to its interim use of Cash Collateral, and the Debtor has undertaken arm's-length negotiations with iStar regarding its use of Cash Collateral pursuant to the terms of this Order.

S.      On August 18, 2010, the Debtor and iStar submitted a mutually agreeable "Order Approving Payment to APS for Pre-Petition Utility Services," (the "APS Order") to the Court, providing for the Debtor's use of Cash Collateral for the limited purpose of paying certain electric bills incurred by the Debtor pre-petition as set forth in the APS Order.

T.      The Debtor represents, warrants and affirms that, apart from the amounts expended pursuant to the agreed terms of the APS Order and other amounts approved by iStar in writing, it has not expended any Cash Collateral since the Petition Date.

U.      iStar is willing to consent to the Debtor's use of Cash Collateral until the occurrence of a Termination Event (defined below), but only pursuant to the terms and conditions set forth in this Order.

V.      Except to the extent specifically agreed herein, iStar has not agreed to any other or further use of the Cash Collateral by the Debtor for any purpose.

W.      The Debtor provided notice of the Motion to the United States Trustee, to iStar, and to each of the Debtor's twenty largest unsecured creditors (collectively, the "Rule 4001 Recipients").  Other than some of the Rule 4001 Recipients, no other party had filed a request for notices with this Court at the time the Motion was filed.  Moreover, no statutory committee of unsecured creditors or other committee has been appointed in the Bankruptcy Case pursuant to Bankruptcy Code § 1102.  As a result, notice that is proper and sufficient under the exigent circumstances of the Motion and the relief granted in this Order has been given pursuant to Bankruptcy Code §§ 1102(1) and 363(c), and Bankruptcy Rules 2002 and 4001(b).

X.      The terms and conditions regarding the use of Cash Collateral pursuant to this Order are fair and reasonable, were negotiated by the parties in good faith at arm's length, and the parties otherwise acted in good faith.

2737191.2

Y.    The Debtor requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2).  The immediate relief granted herein is necessary to avoid irreparable harm to the Debtor and its estate.  Based on the record before the Court, it appears that there is good cause for the Court to authorize the Debtor's limited use of Cash Collateral on an interim basis under the terms and conditions stated herein.  Among other things, entry of this Order shall facilitate the Debtors' efforts to have an orderly reorganization.

Z.    The Court concludes that interim approval under this Order is in the best interests of the Debtor's estate, creditors, and other parties in interest.

AA.    Each of the foregoing findings by the Court shall be deemed a finding of fact if and to the full extent that it makes and contains factual findings and a conclusion of law if and to the full extent that it makes legal conclusions.

Based on the foregoing, and the entire record before the Court, and good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

1.    The paragraphs contained in the foregoing preamble and findings and conclusions are incorporated by reference in this Order, and the Debtor and iStar consent and stipulate to the facts contained in such preamble and findings and to the entry of this Order.

2.    The terms of this Order shall be binding upon Cavan.

3.    Effectiveness of this Order is contingent upon Cavan's repayment of the Prepaid Fees in the amount of $235,000 to the bankruptcy estate, and such Prepaid Fees have, in fact, been repaid as of August 30, 2010 and satisfactory evidence of such repayment in available funds has been provided to Counsel for iStar.  Accordingly, this Order is immediately effective.

4.    The provisions of this Order are without prejudice to iStar's rights to move for appointment of a trustee, examiner, or other custodian to take possession, control, and management of the estate, or to move to compel the Debtor, or such other custodian of the estate as may be appointed, to bring any action or other legal process to recover additional Prepaid Fees

-6-

or any other preferential or avoidable transfers from Cavan or any other transferee. Further, the provisions of this Order are without prejudice to the Debtor's (or any other party's) rights to object to, challenge and/or contest any such actions by iStar. As a corollary to the foregoing, the provisions of this Order are without prejudice to the rights and duty of the Debtor, or such other custodian of the estate as may be appointed, to bring any action or other legal process to recover the Prepaid Fees or any other preferential or avoidable transfers from Cavan or any other transferee. In the event that iStar or any other party determines, after review of the Debtor's accounting and financial statements, that any undisclosed prepayments or other undisclosed avoidable transfers were made to Cavan or any other related entity, the Debtor's right to use the Cash Collateral shall terminate in accordance with the terms of Paragraph 8. Further, the foregoing provisions are without prejudice to the rights of the Debtor to analyze and evaluate, in its business judgment, whether and to what extent to bring any such actions or legal processes. If the Debtor determines not to bring any such action or to institute any legal processes, iStar reserves all of its rights as a creditor.

5. The Debtor may use Cash Collateral only as provided in this Order. If the Debtor fails to comply with the terms and conditions of this Order, iStar is deemed to, and does, object to any subsequent use of the Cash Collateral and the Debtor's right to use the Cash Collateral shall terminate in accordance with the terms of Paragraph 8.

6. The Debtor shall not use nor request of the Court that it be allowed to use any of the Cash Collateral in any plan of reorganization to fund payments to third parties, to pay administrative or other costs in the Bankruptcy Case, to pay any priority claims, or to reduce iStar's claims in the Bankruptcy Case, except as otherwise provided herein with respect to the use of Cash Collateral, payment of the approved expenses pursuant to the Budget and other payments authorized by this Order, and except to pay taxes, insurance, and necessary operating expenses that must be paid to protect iStar's collateral.

2737191.2

7.      Unless extended further either (a) with the consent of iStar (confirmed by the entry of a further order of the Bankruptcy Court) or (b) further order of this Court, the authorization granted to the Debtor to use Cash Collateral under this Order shall terminate by its own terms, without further action by any party or the Court, upon the earliest of (i) the occurrence of the date that is ninety (90) days after entry of this Order; (ii) the date upon which the Debtor is no longer a debtor-in-possession in the Bankruptcy Case or is otherwise limited or excluded from the control and operation of its business (through appointment of a trustee or an examiner under the Bankruptcy Code, or through the appointment of some other type of fiduciary or custodian under federal or state law); (iii) seven (7) business days after the date that iStar serves upon the Debtor a Notice of Termination that iStar is withdrawing its consent to the use of Cash Collateral as provided in Paragraph 8, unless use of Cash Collateral is otherwise ordered by the Court following a hearing after notice to iStar; (iv) the granting of stay relief to any party that claims an interest in the Collateral or the Replacement Collateral (defined below); (v) the filing by the Debtor or any other party in interest of any motion that seeks to grant to a party other than iStar a lien or security interest equal or senior to the liens and security interests held by iStar in the Collateral and the Replacement Collateral (defined below); (vi) the Debtor ceasing to operate its business without the prior written consent of iStar; (vii) the discovery by iStar that the Debtor has made undisclosed prepayments or other avoidable transfers to Cavan, RCC Holdings, LLC, or any other related entity; or (viii) the Debtor utilizing the funds in the Reserve Account (defined below) in violation of the terms of this Order or any other order of the Court (any of the foregoing (i)-(viii) shall be referred to as a "Termination Event").  Notwithstanding any such termination, the rights, claims, security interest, liens and priorities of iStar with respect to all transactions that occur prior to the occurrence of such Termination Event, including, without limitation, all liens and priority claims approved by this Order, shall remain unimpaired and unaffected by any such termination, shall survive any such termination, and shall be binding upon any and all successors-in-interest to the Debtor, including any trustee that may be appointed in the Bankruptcy Case.

-8-

8.     In the event that iStar determines that (i) the Debtor failed to comply with any term or condition of this Order, or (ii) a Termination Event has occurred, iStar may serve upon the Debtor and the Rule 4001 Recipients a Notice of Termination of Consent to Use of Cash Collateral (the "Notice of Termination").  Service of the Notice of Termination upon the Debtor and upon the Rule 4001 Recipients shall be deemed to be served (i) immediately upon personal delivery; (ii) immediately upon email transmission to Debtor's counsel; or (iii) one (1) business day after deposit with an overnight courier service.  The Debtor shall have five (5) business days after service to dispute the Notice of Termination.  In the event that the Debtor and iStar are unable to resolve iStar's concerns in a manner acceptable to iStar, the Debtor's right to use Cash Collateral and the term of this Order shall terminate at the close of business on the seventh (7th) business day after service of the Notice of Termination.  iStar's service of a Notice of Termination shall be deemed to constitute iStar's consent to any attempt by the Debtor to obtain an emergency hearing regarding use of Cash Collateral; however, nothing herein shall prejudice iStar's right to object to the Debtor's attempt to obtain the Court's authorization for use of Cash Collateral.  Moreover, notwithstanding service of a Notice of Termination or actual termination of the terms of this Order (and therefore termination of the Debtor's authorization to use Cash Collateral), iStar shall be deemed to consent to the Debtor's payment from Cash Collateral of the following, to the extent such expenses actually become due in the time between service of the Notice of Termination or actual termination of the terms of this Order, and the time an emergency hearing regarding authorization to use Cash Collateral is conducted (the "Interim Period"):  (i) taxes, (ii) insurance, and (iii) any necessary operating expenses that must be paid to protect iStar's collateral excluding any management fee payable to Cavan.  Payment of any such expenses that actually come due in the Interim Period shall be rebuttably presumed to be reasonable if the total of such expenses paid in the given month including those paid in the Interim Period does not exceed the amount of such expenses budgeted for that month plus the ten percent (10%) variance provided for in Paragraph 10.b. below.  However, iStar shall be entitled to return of any amounts that the

Debtor paid but which did not actually come due in the Interim Period, and any payments of the Debtor made that were unreasonable in amount.

9.     The effective period of the Order may be extended by written agreement of the parties, but nothing herein shall be deemed to require iStar to extend the effective period of the Order, and iStar may refuse to do so for any reason.  In the event iStar determines not to extend the Cash Collateral Order past the ninety (90) day effective period, it shall give the Debtor twenty-one (21) days prior written notice of its decision to allow the Order to expire on the 90th day after entry of this Order.  In that event, iStar shall not object to a request of the Debtor for an emergency hearing regarding use of Cash Collateral, but iStar reserves all of its rights with respect thereto.

10.     After entry of this Order, the Debtor shall establish two additional bank accounts, in addition to the two operating accounts for the Debtor into which it deposits the Cash Collateral (the "Debtor-in-Possession Bank Accounts") and from which it pays the Approved Expenses (defined below) pursuant to the Budget (defined below), as follows:

a.     One additional bank account shall be a joint account with iStar (the "Joint Account") and shall require the signature of both iStar and the Debtor for any withdrawals from the Joint Account.  The funds in the Joint Account may be used by the Debtor, subject to iStar's prior approval, to pay for certain costs and expenses of the Property, including but not limited to (i) payment of real property taxes, and (ii) payment of insurance related to the Collateral (collectively, the "Joint Account Approved Expenditures").  Additionally, iStar may (but nothing herein shall be deemed to require iStar to) agree to allow payment of tenant improvement expenses of the Property and leasing commissions relating to the rental of units at the Property pursuant to the terms of subsection (b), only to the extent that funds in the Reserve Account (defined below) are insufficient to pay such expenses (collectively, the "Joint Account Leasing Expenditures").  To the

extent payment of the Joint Account Leasing Expenditures will cause the Joint Account to contain insufficient funds to timely pay the Joint Account Approved Expenditures, the Joint Account Leasing Expenditures shall not be paid from the Joint Account, notwithstanding any shortage of funds in the Reserve Account (defined below) for payment of such expenses.

b. The second additional bank account shall be a reserve account which shall be a segregated bank account, separate from the Debtor's Debtor-in-Possession Bank Accounts (the "Reserve Account"). The funds in the Reserve Account may be used by the Debtor, without iStar's prior written approval or additional Court authority, for payment of expenses set forth in the Budget in amounts that exceed the budgeted amounts ***but only*** up to ten (10) percent in the aggregate in excess of the total amount of expenses set forth in the Budget on a monthly basis ("Excess Budgeted Amounts"). The funds in the Reserve Account may be used by the Debtor for payment of necessary operating, maintenance and/or repair expenses of the Property that are either not included in the Budget (defined below) or that are included in the Budget (defined below) but the amounts for which exceed the Excess Budgeted Amounts ("Unbudgeted Necessary Expenses") ***but only after*** either (A) iStar affirmatively consents to payment of such Unbudgeted Necessary Expenses (with such consent confirmed by written e-mail or other written correspondence within three (3) business days of receipt of notice), or (B) the Court grants authority to use funds in the Reserve Account to pay an Unbudgeted Necessary Expense in the event iStar affirmatively objects to the Debtor's request within such three (3) day period. In the event any Unbudgeted Necessary Expenses must be paid to prevent imminent harm to the health and safety of tenants of the Property or to prevent imminent harm to the Property itself ("Unbudgeted Necessary Safety Expenses"), and iStar fails to respond to the

Debtor's written request for payment of such Unbudgeted Necessary Safety Expenses within three (3) business days after receipt by iStar of notice, the Debtor shall be authorized to pay such Unbudgeted Necessary Safety Expenses. Notwithstanding the foregoing, nothing herein shall be construed as a waiver of iStar's right to object to the reasonableness or necessity of any Unbudgeted Necessary Safety Expenses paid pursuant to this provision, and to seek return of any unreasonable or unnecessary amounts paid. In addition to the foregoing, subject to either (i) iStar's prior written approval or (ii) Court authority following notice to iStar and an opportunity for iStar to be heard, the Debtor may use funds in the Reserve Account to pay certain other costs and expenses of the Property, including but not limited to: (A) funding tenant improvements, so long as the tenant improvements relate to leases approved by iStar, and (B) payment of leasing commissions relating to the rental of units at the Property, so long as the leasing commissions relate to leases approved by iStar (collectively and together with the Excess Budgeted Amounts and the Unbudgeted Necessary Expenses, the "Reserve Account Approved Expenditures").

11.     The Joint Account and the Reserve Account shall be established at JP Morgan Chase Bank. The liens and security interests held by iStar in the funds constituting Cash Collateral shall continue notwithstanding deposit in the Joint Account or the Reserve Account to the same extent and priority as iStar's asserted lien in the Cash Collateral.

12.     The Debtor shall hold and administer the Joint Account and the Reserve Account strictly in accordance with the terms of this Order.

13.     Within fifteen (15) days after the close of each month following entry of this Order, the rents and other funds constituting Cash Collateral received by the Debtor for that month which remain after payment of all Approved Expenses (defined below) for that month shall be paid or deposited by the Debtor as follows:  one-third (1/3) shall be paid to iStar as

-12-

adequate protection payments pursuant to Bankruptcy Code §§361 and 363 (the "Partial Adequate Protection Payments"); one-third (1/3) shall be deposited into the Reserve Account; and one-third (1/3) shall be deposited into the Joint Account.

14.     Nothing contained in this Order shall preclude iStar and the Debtor from agreeing that the amounts in the Joint Account or the Reserve Account may be used for purposes other than for the Joint Account Approved Expenditures or the Reserve Account Approved Expenditures; however, nothing herein shall excuse compliance with Bankruptcy Code § 363.

15.     In the event the Debtor requests approval of iStar for an expenditure from the Reserve Account which is not a Reserve Account Approved Expenditure and iStar objects to such request, the Debtor may request approval of the Court notwithstanding iStar's objection; provided, however, that iStar reserves all of its rights and objections with respect to any such request by the Debtor, including, but not limited to, that prior to any such unauthorized use, the Debtor must provide additional adequate protection to iStar.

16.     Notwithstanding anything to the contrary herein, the Debtor is authorized to use Cash Collateral from the Debtor-in-Possession Bank Accounts to pay the ordinary and necessary operating expenses of the Debtor listed on the budget ("Budget") attached hereto as Exhibit "A" (the "Approved Expenses"); provided, however, that notwithstanding that the Budget provides for $5000 per month to Highland Financial Consulting, LLC ("Highland") for its services as the Chief Restructuring Officer (the "Highland Fee"), the Highland Fee shall not be deemed an Approved Expense and the Debtor or Highland shall be required to file a fee application seeking approval of a Highland Fee. iStar does not consent to the retention of Highland nor to payment of the Highland Fee and retains and does not waive its right to object to the retention of Highland or payment of any Highland Fee. The Approved Expenses include (a) a "Property Management Fee" payable to Cavan equal to three percent (3%) of gross revenues generated and collected from the Property, (b) engineering department fees and costs payable to Cavan, as set forth in the budget, and (c) pass through maintenance and repair costs and expenses

charged to Cavan credit cards that are reimbursed to Cavan and are included within the repair and maintenance line items in the Budget. No other payments, including but not limited to any "Asset Management Fees," shall be made to Cavan. No payments other than the Approved Expenses shall be made to any party, absent either the consent of iStar or an order of the Court.

17.     Within five (5) days of entry of this Order, the Debtor shall remit to iStar the sum of $68,914.94 (the "Tax Payment") which represents two-thirds of the amount of delinquent pre-petition real property taxes with respect to the Property (the "Delinquent Taxes"). Nothing contained in this Order shall prohibit iStar from paying the Delinquent Taxes as a protective advance under the Loan Documents and adding the amount of the Delinquent Taxes paid by iStar to its claim against the Debtor.

18.     Within five (5) days after entry of this Order, the Debtor shall remit to iStar one-third (1/3) of the remaining Cash Collateral, minus the Retained Tenant Payments, held by the Debtor as of the date of this Order after (a) payment of all August operating expenses as set forth in the Budget and (b) payment and delivery of the Tax Payment to iStar.

19.     iStar asserts that the Partial Adequate Protection Payments are not sufficient to provide adequate protection to iStar of its interest in the Cash Collateral. In addition, iStar asserts that the Partial Adequate Protection Payments will not satisfy the requirements of 11 U.S.C. § 362(d)(3)(B). Notwithstanding the foregoing, so long as the Debtor complies with all other terms and conditions of this Order and no Termination Event has occurred, iStar shall not seek stay relief based on the Debtor's failure, if any, to comply with 11 U.S.C. § 362(d)(3), provided that the Debtor has filed a plan of reorganization within one hundred twenty (120) days after the Petition Date that satisfies the conditions of 11 U.S.C. § 362(d)(3)(A) in regard to possibility of confirmation within a reasonable time. If the Debtor fails to file a plan satisfying 11 U.S.C. § 362(d)(3)(A) within such 120 day period, then iStar shall be entitled to, among other things, assert the nonpayment of interest under 11 U.S.C. § 362(d)(3)(B) as a basis for stay relief or, in the alternative, the Debtor shall commence making payments to iStar in accordance with 11

-14-

U.S.C. § 362(d)(3)(B). The Debtor reserves any and all rights to challenge iStar's contentions in any such motion for stay relief.

20. Nothing in this Order shall preclude iStar from seeking an order of the Court ordering the Debtor to pay iStar any portion of the funds on deposit in the Reserve Account if the amounts on deposit in the Reserve Account exceed $300,000. Nothing herein shall preclude the Debtor from objecting to or challenging any such request.

21. Within fifteen (15) days after the date of entry of the Order, the Debtor shall provide a full and complete accounting of its income and expenses for April, May, June, and July, 2010, including a reconciliation of cash (including a detailed listing of the use of all excess cash from the Property for those months), copies of all general ledgers, copies of all bank statements, and a detailed listing of all checks that includes the check numbers and other information required to reconcile the checks with the bank statements, showing the disposition of the Debtor's cash. At the same time, the Debtor shall provide iStar with an accurate and detailed aging report of current accounts payable and accounts receivable.

22. The Debtor shall submit a copy of all monthly operating reports filed in the Bankruptcy Case to iStar (the "Monthly Reports"). Each Monthly Report must include a detail comparing the actual amounts collected and paid during the previous month with the collection and expense amounts stated in the Budget, and a copy of the rent roll current as of that month. At the same time that each Monthly Report is filed, the Debtor shall submit to iStar an accurate and detailed aging report of accounts payable and accounts receivable as of the end of the month covered by the Monthly Report. Also at the same time each Monthly Report is filed, the Debtor must provide iStar with an accounting reflecting the balance of each of the Debtor-in-Possession Bank Accounts, the Joint Account, and the Reserve Account for the month covered by the Monthly Report. Such accounting shall include reconciliations with the account balances from the previous month and copies of all bank statements for each of the accounts.

2737191.2

23.     The Debtor shall respond promptly to any request for accounting or other financial information from iStar and shall permit inspection of its books and records, or the Property or other Collateral by iStar (or its representatives) at any reasonable time.

24.     The Debtor shall (a) permit iStar or any person designated by iStar to visit and inspect the Property; (b) obtain iStar's prior approval of any new leases or lease amendments; (c) maintain insurance on the Property in accordance with the pre-petition insurance coverages on the Property; (d) maintain full and complete books of account and other records reflecting the results of operations; and (e) except to the extent modified by this Order, comply with the following provisions of Article VII of the Loan Agreement:  (a) 7.1 to the extent of any post-petition liens; (b) 7.2; (c) 7.5; (d) 7.12 to the extent not inconsistent with the Bankruptcy Code, the Bankruptcy Rules or a final order with respect to a confirmed plan of reorganization; (e) 7.13 except as otherwise might be ordered by the Bankruptcy Court after notice and hearing; and (f) 7.15.

25.     On or before September 25, 2010, the Debtor and its related entities shall either acknowledge and agree to the amount of iStar's claim, as set forth above, and the validity, extent and first priority position of the liens and security interests of iStar in the Collateral or notify iStar of any disputes, challenges, disagreements, defects, or defenses to the amount, validity, extent and/or priority of iStar's claims and liens.  Also on or before September 25, 2010, the Debtor and its related entities shall either acknowledge and agree that they have no claims against iStar arising from the Loan or otherwise, and that they have no claims or defenses to the amount, validity, extent and priority of iStar's claims and liens and security interests, or notify iStar of any disputes, challenges, disagreements, defects, or defenses to the amount, validity, extent and/or priority of iStar's claims and liens.  If the Debtor or its related entities do not so inform iStar of any disputes, challenges, disagreements, defects, or defenses as to the amount, validity, extent and/or priority of iStar's claims and liens by September 25, 2010, then the amount, validity, extent and priority of iStar's claims and liens will not be subject to any future challenges

2737191.2

by the Debtor or its related entities.

26.     Notwithstanding anything in Bankruptcy Code § 552 to the contrary, and in addition to its liens and security interests under the existing Loan Documents, iStar shall have and is hereby granted (effective and continuing without the necessity of the execution, filing, and/or recordation of mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statement or otherwise), a valid and perfected security interest and lien (the "Replacement Lien(s)") in all of the Debtor's now-owned or after-acquired real and personal property of all types (collectively, the "Replacement Collateral"), including without limitation the Debtor-in-Possession Bank Accounts, the Joint Account, the Reserve Account, and all replacements, supporting obligations, offspring, products, and proceeds of the existing Collateral and the Replacement Collateral, to the same extent and priority as iStar's pre-petition security interest and liens.  The Replacement Liens shall be evidenced by the existing Loan Documents and this Order.

27.     Subject to paragraph 25, above, iStar shall retain all of its existing liens and security interests in all of the Collateral, including, without limitation, the liens and security interests described above and any rights of setoff.  The Replacement Liens shall be senior to all other security interests, liens, and rights of setoff.

28.     The Replacement Liens in the Replacement Collateral granted hereby shall be valid, perfected, enforceable and effective against the Debtor and its successors and assigns, including any trustee or other receiver or custodian of the estate in this or any superseding Chapter 7 case, without any further action by the Debtor or iStar and without the execution, delivery, filing or recordation of any mortgages, deeds of trust, security agreements, control agreements, pledge agreements, financing statement or otherwise.  The Debtor acknowledges that iStar may, but is not required to, file any financing statement to perfect the Replacement Liens granted by this Order.  The automatic stay under 11 U.S.C. § 362 is hereby modified to permit iStar, in its sole discretion, to file this Order or any of the foregoing documents to give notice of

-17-

such liens and security interests.

29.     To the extent that the Court subsequently finds and determines that the Replacement Lien granted to iStar in this Order do not provide iStar with adequate protection of its interest in the Cash Collateral, iStar shall have a super-priority administrative expense claim (the "Super-Priority Claim") under 11 U.S.C. § 507(b) as necessary to compensate iStar fully for the use of its Cash Collateral by the Debtor.  The Super-Priority Claim of iStar shall have priority over all administrative expenses of any kind incurred in the Bankruptcy Case, including such administrative expenses of the kinds specified in, or allowable under 11 U.S.C. §§ 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 of the Bankruptcy Code.  No costs or expenses of administration which have been or may be incurred in these proceedings, any conversion of these proceedings pursuant to Section 1112 of the Bankruptcy Code, or in any other proceeding related hereto, and no priority claims are, or shall be, prior to or on a parity with the claim of iStar against the Debtor.

30.     Nothing in this Order shall be deemed or construed as an admission or waiver by iStar or the Debtor as to adequate protection, or any other issue in the case, and this Order shall not constitute consent by iStar to the use of its Cash Collateral other than for the purposes and during the period expressly provided herein.  In addition, except as specifically provided in this Order, nothing contained in this Order shall prejudice the rights of iStar to:  (i) terminate its consent to the use of Cash Collateral due to a Termination Event or otherwise, or withdraw its consent to the Debtor's continued use of Cash Collateral, which termination or withdrawal of consent shall become effective upon the terms and time periods set forth in Paragraphs 7 and 8; (ii) seek further relief from the automatic stay of § 362(a) of the Bankruptcy Code except as expressly stated herein; (iii) oppose confirmation of any plan of reorganization filed by the Debtor or any other party in interest; (iv) oppose approval of any DIP Order; (v) seek a dismissal of the Debtor's Bankruptcy Case; (vi) seek allowance of an administrative claim or additional adequate protection in connection with iStar's Cash Collateral; or (vii) seek any other

relief under the Bankruptcy Code, Bankruptcy Rules, or any other legal authority, that iStar may deem necessary and appropriate under the circumstances. Moreover, nothing contained in this Order shall be deemed to waive or diminish any rights of iStar under the Loan Documents. Similarly, nothing in this Order shall prejudice or impair the Debtor's rights to oppose any relief requested by iStar, file a plan of reorganization impairing the treatment of iStar's asserted claim, seek the use of Cash Collateral over iStar's objection, or take any other actions authorized by the Bankruptcy Code with respect to the Property subject to notice and a hearing.

31. Within two (2) business days after the entry of this Order, the Debtor shall transmit by regular mail copies of this Order (as entered by the Court) to the Rule 4001 Recipients.

32. The provisions of this Order shall be binding up on and inure to the benefit of iStar and the Debtor and their respective successors and assigns, including but not limited to any trustee in bankruptcy hereinafter appointed as a representative of the Debtor's estate. No later than the date forty-five (45) days from the service of this Order on the Rule 4001 Recipients (the "Lookback Period"), any party in interest (including any statutory committee appointed in the case, but not including the Debtors) may object to, challenge, or seek to avoid the amount, validity, or enforceability of the Loan Documents, the Obligations, or iStar's liens and security interests in the Collateral. Subject to paragraph 25, above, if no such action, objection or other challenge is commenced through an appropriate contested matter or adversary proceeding by a party in interest within the Lookback Period, then the Obligations owing from the Debtor to iStar under the Loan Documents shall be deemed and adjudicated finally and indefeasibly as valid and enforceable, and the liens and security interests of iStar in the Collateral shall be deemed and adjudicated finally and indefeasibly as valid, enforceable, unavoidable and perfected.

33. Any of the requirements of this Order may be waived or modified by iStar and the Debtor jointly in writing.

1         34.     No subsequent stay, modification, termination, failure to extend the term of

2    or vacation of this Order shall affect, limit or modify the validity, enforceability or perfection of

3    the Replacement Liens granted to iStar.

4         35.     This Order shall be effective immediately notwithstanding the provisions

5    of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

6         36.     The Court has and shall retain jurisdiction to enforce this Order according

7    to its terms.  The Court shall conduct a Final Hearing on the Motion and this Order on October

8    19, 2010 at 11:00 o'clock a.m.  Any party in interest objecting to the Court's entry of a Final

9    Order shall file a written objection with the United States Bankruptcy Court Clerk for the District

10   of Arizona no later than ten (10) business days prior to the Final Hearing, which objections shall

11   be served so that the same are received by the Court, the United States Trustee, counsel to the

12   Debtors and counsel to iStar on or before such date and time.

13        37.     If no objections to this Order are timely filed, this Order shall become a

14   final Order with respect to the Debtor's use of Cash Collateral for the time periods and on the

15   conditions stated herein without further order of the Court.

16        DATED AND SIGNED AS INDICATED ABOVE.

17

18   Approved as to form and content:

19

20   /s/  *Philip R. Rudd*
21   John J. Hebert (#010633)
     Philip R. Rudd (#014026)
22   Wesley D. Ray (#026351)
     POLSINELLI SHUGHART PC
23   3636 North Central Avenue, Suite 1200
     Phoenix, AZ  85012
24   *Attorneys for Debtors*

25

26

-20-

1   /s/  *Susan G. Boswell*
    Susan G. Boswell (#004791)
2   QUARLES & BRADY LLP
    One South Church Avenue, Suite 1700
3   Tucson, AZ 85701
    *Attorneys for iStar FM Loans LLC*
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2737191.2