Quarles & Brady LLP
Firm State Bar No. 00443101
One South Church Avenue, Suite 1700
Tucson, AZ  85701-1621
TELEPHONE 520.770.8700
FACSIMILE 520.770.2222
SUSAN.BOSWELL@QUARLES.COM

Susan G. Boswell (AZ Bar #004791)

Attorneys for Plaintiff iStar FM Loans LLC

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISCTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>RCC SOUTH, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:10-bk-23475-SSC<br><br>**MOTION TO TERMINATE EXCLUSIVITY** |

iStar FM Loans LLC ("iStar"), the prepetition senior-secured lender to the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby moves this Court for entry of an order pursuant to 11 U.S.C. § 1112(d)(1) terminating the Debtor's exclusive right to file a plan of reorganization (this "Motion").  In support of this Motion, iStar states as follows

## Preliminary Statement

The Debtor's bankruptcy filing is a text book example of a bad faith filing.  Specifically, the Debtor (i) has no employees, (ii) has only one material asset, (iii) has one principal secured creditor whose claim exceeds the value of the Debtor's property, (iv) is liable on a fully matured loan; (v) is engaged in a two-party dispute with the secured creditor, which dispute can be resolved by a pending state court receivership action, (v) filed its bankruptcy petition hours after the receivership action was commenced and (vi) has demonstrated no ability to reorganize.

The Debtor's sole purpose in filing its bankruptcy petition was to hinder and delay the appointment of a receiver to manage the Property (as defined below) as requested by iStar in a Maricopa County receivership action. The timing of the Debtor's filing alone demonstrates that it is using the chapter 11 process and the judicial system to thwart iStar's state-law remedies arising from a loan that iStar made to the Debtor prepetition.

The Debtor now files a plan and disclosure statement that are patently non-confirmable and only exacerbate their bad faith. The plan and disclosure statement make clear that the Debtor intends, through gerrymandering a nonsensical classification of creditors (many of whom are fully secured and completely unimpaired), to (i) cram down iStar, (ii) acknowledge the lack of equity in the Property, (iii) allow its existing equity holders to nonetheless keep their existing equity interests, (iv) continue having its insider manage the property, and (v) usurp any upside potential of the Property without paying superior creditors in full. The disclosure statement should not be approved and the plan cannot be confirmed. As such, iStar requests an opportunity to propose an alternative plan that faithfully complies with the strictures of section 1129(a) of the Bankruptcy Code and maximizes the recovery for all creditors.

## Jurisdiction and Venue

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 11 U.S.C. § 157(b)(2)(A), (L), and (O).

The predicates for the relief requested herein are section 1112 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 9014 of the Federal Rules of Bankruptcy Procedure.

## Background

### A. The Debtor.

The Debtor is the owner of certain real property and improvements located at 8800, 8840, and 8888 East Rain Tree Drive, Scottsdale, Arizona (the real property, together with the building, structures, improvements, furniture, fixtures, equipment and personal property pertaining to or


Quarles & Brady LLP

affixed thereon, the "Property"). The Property is being operated as a series of office buildings under the name "Raintree Corporate Center." The Debtor asserts that the Property has a value between $38 million and $47 million.

According to its filed schedules, the remaining assets of the Debtor consist primarily of furniture and equipment, which allegedly have a book value of $1,786,894.41. (*See* Docket No. 32 at Schedule B). In the Disclosure Statement (as defined below), the Debtor asserts the personal property's value is negligible. (*See* Disclosure Statement at 7).

Substantially all of the debt in this chapter 11 case is held by iStar. The Debtor scheduled iStar with a secured claim of $68,507,872.31 (Docket No. 32 at Schedule D); iStar has asserted a secured claim in the Debtor's chapter 11 case in the amount of $76,708,398.75. (*See* Disclosure Statement at 7).

**B. iStar's Loan and the Mortgage.**

The Debtor was borrower under the Loan and Security Agreement dated as of December 21, 2006 (as amended, restated, supplemented, or otherwise modified from time to time, the "Credit Agreement"), by and among Fremont Investment & Loan ("Fremont") and the Debtor. The Debtor also executed a secured promissory note in the amount of $79,000,000 (as amended, restated, supplemented, replaced or otherwise modified, the "Note").

To secure repayment of the Debtor's indebtedness under the Credit Agreement, the Note, and related documents and agreements (collectively, the "Loan"), the Debtor granted to Fremont security interests in and liens upon substantially all of the Debtor's real and personal property pursuant to, and as detailed in, (i) the Credit Agreement, (ii) that certain Deed of Trust and Fixture Filing dated as of December 21, 2006 (as amended, restated, supplemented, or otherwise modified from time to time, the "Mortgage") by the Debtor to Stewart Title & Trust of Phoenix, Inc., in favor of Fremont, and (iii) that certain Assignment of Rents (and Leases) dated as of December 21, 2006 (as amended, restated, supplemented, or otherwise modified from time to time, the "Assignment of Rents"), by the Debtor in favor of Fremont.





Quarles & Brady LLP

On or about June 29, 2007, Fremont assigned to iStar the Loan, the Credit Agreement, the Note, the Mortgage, the Assignment of Rents, and related documents evidencing the Debtor's indebtedness and obligations and the liens and security interests granted by the Debtor.

Fremont, and iStar as the assignee of Fremont, perfected their security interests in the Debtor's real and personal property by filing Uniform Commercial Code financing statements, fixture filings, the Mortgage, and the Assignment of Rents in the appropriate jurisdictions. A copy of the Credit Agreement, the Note, the Mortgage, the Assignment of Rents, financing statements and related documents (collectively, the "Loan Documents") were filed in this chapter 11 case with the Appendix of Loan and Security Documents (Docket No. 11).

**C. The Receivership Action.**

On July 21, 2010, iStar sent a default notice to the Debtor after the Debtor failed to repay the Loan by its maturity date of July 1, 2010. In accordance with the Assignment of Rents, iStar gave notice to the Debtor's tenants that as a result of the Debtor's default, iStar was enforcing its remedies under the Loan Documents to collect the rents derived from leases upon the Property.

In a letter dated July 22, 2010, the Debtor instructed the tenants to stop making payments of rents or obligations on their leases in direct violation of the Loan Documents. The Debtor sent this instruction to the tenants even though the Debtor was in default under the Loan Documents and knowing that the Loan Documents entitled iStar to collect rents derived from leases upon the Property in the event of a default by the Debtor. By instructing the tenants to withhold rents and other payments to iStar, the Debtor unjustifiably prevented iStar from exercising its remedies under the Loan Documents, and the Debtor was jeopardizing the safe operation and management of the Property.

Consequently, on July 27, 2010, iStar filed its Verified Complaint and Application for Appointment of Receiver Without Notice and Motion for Immediate Appointment of a Receiver Ex Parte in the Maricopa County Superior Court (the "Receivership Action") seeking to gain control of the Property.





Quarles & Brady LLP

**D. The Debtor's Chapter 11 Filing.**

On July 27, 2010 (the "Petition Date"), hours after iStar commenced the Receivership Action, the Debtor filed its petition under chapter 11 of the Bankruptcy Code.

As of the Petition Date, the Debtor was indebted to iStar in the approximate amount of $76,708,398, which amount is exclusive of post-petition interest, costs, and expenses, including attorneys' fees.

**E. The Debtor Proposes an Improper Plan that Cannot be Confirmed.**

On November 24, 2010, on the 120th day of its bankruptcy case, the Debtor filed its plan of reorganization (Docket No. 69, hereinafter referred to as the "Plan") and its supporting disclosure statement (Docket No. 70, hereinafter referred to as the "Disclosure Statement"). The Disclosure Statement provides inadequate information, and the Plan is patently non-confirmable.[1] Among other reasons, the Plan and Disclosure Statement fail because they improperly classify claims, impermissibly gerrymander classes of creditors, violate the absolute priority rule and enable interest holders to receive and realize superior treatment on account of their interests without paying senior creditors in full, contain unintelligible projections that reflect the Debtor's inability to support its own flawed Plan, and blatantly serve only the interests of insiders at the expense of bona fide creditors, including iStar.

**Relief Requested**

Pursuant to 11 U.S.C. § 1121(d), the court may decrease a debtor's exclusivity period for cause. The "cause" standard is not defined under the Bankruptcy Code. *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 131 (S.D.N.Y. 2006). Case law has identified the following factors to consider in determining whether cause exists to extend or terminate the exclusivity period: "(a) the size and complexity of the case; (b) the necessity for sufficient time to permit the

[1] iStar will be filing an objection to the adequacy of the Disclosure Statement consistent with this Court's December 2, 2010 order setting, among other things, the hearing on the Disclosure Statement for January 20, 2011.

Quarles & Brady LLP

debtor to negotiate a plan of reorganization and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) the fact that the Debtor is paying its bills as they become due; (e) whether the Debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the Debtor has made progress in negotiations with its creditors; (g) the amount of time which has elapsed in the case; (h) whether the Debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the Debtor's reorganization demands; and (i) whether an unresolved contingency exists." *In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 487 (Bankr. D. Conn. 2007) (citing *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006)). Consideration of the factors relevant here demonstrates that the requested reduction in the exclusivity period is appropriate in the unique circumstances of this case.

**A. The Debtor's Case is Not Complex.**

The Debtor has a very straight-forward single-asset real estate case that involves a two-party dispute. The only significant creditor of the estate is iStar, and the only creditor impaired by the Debtor's Plan is iStar. All of the other creditors specifically enumerated in the Plan are either fully secured or unimpaired under any potential treatment of any plan.

For example, Fennemore Craig, P.C. and Larson Allen, LLP are separately-classified and allegedly impaired creditors (*see* Plan at 7, 11), but each law firm is holding a retainer in excess of the claim it holds against the estate. Similarly, Laser Spine is a tenant of the Debtor with an unsecured claim against the Debtor that has agreed to setoff its claim against future rent owing to the Debtor. (*see* Plan at 12-13.)

The Debtor alleges that Sonoran Pacific is an impaired, secured creditor that will accept payments over time. The Debtor fails to disclose that Sonoran Pacific has not properly perfected its security interest in the Debtor's property and, therefore, is nothing more than an unsecured creditor entitled only to its pro rata share after secured claims, administrative expenses, and priority claims are paid in full.

Quarles & Brady LLP

Cavan Management Services is also an unsecured creditor and an insider, so its vote for any plan will not count. 11 U.S.C. § 1129(a)(10). Other than Cavan and Sonoran Pacific, there are very few unsecured creditors on the Debtor's schedules apart from tenants with security deposits held with the Debtor. Those parties are unimpaired under the Debtor's Plan and likely will be unimpaired under any scenario.

Additionally, the Debtor asserts that there is no equity in the Property to satisfy any claims beyond iStar's secured claim. This case is clearly a two-party dispute between the Debtor and iStar, without the complexities or intricacies that might be necessary to require a lengthy exclusivity period. As such, this factor militates in favor of reducing the Debtor's exclusivity period.

**B. The Debtor Has Not Filed a Viable Plan and Has Not Reflected that Any Amount of Additional Time Will Yield a Confirmable Plan.**

The Debtor is not able to confirm and consummate the Plan. The Plan seeks to cram down iStar, reduce the interest rate payable to iStar, and to extend the maturity date out seven years. Nonetheless, the Debtor admits that its own projections do not support this strategy. The Plan itself confesses that, *for the first three years following confirmation*, the Property will not generate sufficient income to pay iStar under the Plan. On its face, the Plan is not feasible on this basis alone. Additionally, the Debtor will not be able to prove that it is complying with section 1129(b)(2)(A) by requiring iStar to maintain a 100% loan-to-value restructured note with a below market interest rate of 6% for 7 additional years.

The Plan further provides that unsecured claims, the vast majority of which is comprised of iStar's deficiency claim,[2] will receive a secured, subordinated, interest-free, no-amortization note capped at $3,000,000. In other words, all unsecured creditors will get a pro rata share of

---

[2] Assuming the Debtor's valuation of the Property at $47,000,000 is accurate, iStar's deficiency claim will be just under $30,000,000 and vastly exceeds the approximately $600,000 in unsecured claims scheduled by the Debtor, many of whom, as discussed above, are unimpaired parties.

Quarles & Brady LLP

$3,000,000 seven years following confirmation. Additionally, unsecured creditors will receive $500,000 in cash, which is payable from the $5,500,000 contribution from the Debtor's current interest holders. Assuming an unsecured claims pool of approximately $30,000,000, the Debtor's Plan proposes a capped dividend of approximately 10% to unsecured creditors over 7 years, without interest. However, in support of its Disclosure Statement, the Debtor reflects that, at the end of those 7 years, the value of the Property will have increased to over $74,000,000. (*See* Exhibit A to the Disclosure Statement.) Leaving aside any question about the validity of the Debtor's projections, the Debtor asserts in the Plan and Disclosure Statement that there is sufficient value in the reorganized entity after 7 years, to pay all claims in full. Nonetheless, unsecured claims will be capped at 10% of their value.

In addition, and in violation of the absolute priority rule, the Debtor proposes to give all equity in the reorganized company to the current interest holders pursuant to an insufficient equity contribution of only $5,500,000. The Debtor also fails to properly market the new equity in the reorganized entity and includes in the Plan bid-chilling procedures that would govern an auction of the new equity. The Debtor's clear intent in the Plan is to ensure that no other parties bid for the equity in the reorganized company.

The Debtor's Plan is not confirmable. The Debtor has had ample to time to develop a plan and reorganization strategy, and, despite that time, has only submitted a plan that cannot be confirmed. The exclusivity period should be terminated to permit iStar to propose an alternative plan.

**C. The Debtor is Proceeding in Bad Faith.**

This case is a bad faith filing, and the Debtor's Plan is consequently tarred with that same bad faith. Where a debtor with one significant asset files a petition solely to forestall a creditor from enforcing its state-law remedies, courts in the Ninth Circuit have not hesitated to find a bad faith filing. *See Fryer/McElhaney Joint Venture v. S & S/Moab Enters.*, 83 F.3d 428 (9th Cir. 1996); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828-29 (9th Cir. 1994); *Chu v. Syntron*



Quarles & Brady LLP

*Bioresearch, Inc.*, 253 B.R. 92, 95-97 (S.D. Cal. 2000) (affirming bankruptcy court's finding of cause to convert case); *St. Paul Self Storage Ltd. P'ship v. Port Auth. of St. Paul*, 185 B.R. 580, 582-84 (B.A.P. 9th Cir. 1995); *In re Detienne Assocs. Ltd. P'Ship*, 342 B.R. 318, 324-27 (Bankr. D. Mont. 2006); *In re Erkins*, 253 B.R. 470, 475-477 (Bankr. D. Idaho 2000); *In re Meyers Way Dev. Ltd. P'ship*, 116 B.R. 239, 242-45 (Bankr. W.D. Wash. 1990). Generally, courts will dismiss bad faith filings to prevent abuse of the bankruptcy process by debtors that merely seek to cause hardship or to delay the enforcement of creditors' state-law remedies. *Meadowbrook Investors' Group v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.)*, 30 B.R. 503, 505 (B.A.P. 9th Cir. 1983) (cited with approval in *In re Arnold*, 806 F.2d 937, 393 (9th Cir. 1986)).

Bad faith exists when the debtor attempts to deter and harass creditors rather than attempting to effect a speedy, efficient reorganization on a feasible basis. *Marsch*, 36 F.3d at 828. Courts in the Ninth Circuit have routinely dismissed cases after weighing the following factors:

> (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two party dispute capable of prompt adjudication in state court.

*See, e.g.*, St. Paul Self, 185 B.R. at 582-835; *see also Canadian Imperial Bank of Commerce v. Oklahoma P.A.C. First Ltd. P'Ship (In re Oklahoma P.A.C. First Ltd. P'Ship)*, 122 B.R. 394, 402-03 (Bankr. D. Ariz 1990) (listing factors). When these factors indicate that that the debtor is unreasonably deterring or harassing creditors, as is the case here, the Court should conclude that bad faith exists. *See id.* With the Plan, the Debtor's bad faith continues. The Plan is specifically designed – by creating from whole cloth numerous classes of allegedly impaired creditors and by violating the absolute priority rule to maintain the current interest holders while eviscerating iStar's ability to recover on its claims – to frustrate iStar.

When a debtor commences a case in bad faith, the debtor's subsequent ability to comply with the good faith requirement of section 1129(a)(3) of the Bankruptcy Code is jeopardized. "It

Quarles & Brady LLP

seems unquestionable to us that the taint of a petition filed in bad faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement." *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987).

Because the Debtor is proceeding in bad faith, its ability to confirm its Plan is highly questionable. Exclusivity should be terminated to allow iStar to move forward with a confirmable plan that will not be tainted by the Debtor's bad faith.

**D. iStar's Plan Would Be Confirmable and Proposed in Good Faith.**

Each of the relevant factors supports terminating exclusivity and permitting iStar and other parties in interest to file plans to compete with the Plan. Allowing competing plans will facilitate the Debtor's chapter 11 case to move forward toward a swift and fair resolution because the Court and creditors will be faced with at least two proposals to reorganize the Debtor, rather than permitting the Debtor to go forward, have confirmation be denied, and then restart the whole process. "A transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution." *In re Henry mayo Newhall Mem. Hosp.*, 282 B.R. 444, 453 (9th B.A.P. 2002) (citing *In re Dow Corning*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997)).

iStar's plan would involve the following features:

- Transferring the Property to iStar in full satisfaction of iStar's claims;
- Payment in full in cash of all allowed administrative expenses and priority claims;
- Payment in full of, and leaving unimpaired, all allowed secured claims, including those of the taxing authorities, Fennemore Craig P.C., and Larson Allen, LLP;
- Paying in full and in cash all allowed unsecured claims; and
- Cancellation of all interests and dissolution of the Debtor.

iStar's plan would meet the requirements of section 1129(a) of the Bankruptcy Code and would have no impaired classes, other than of the Debtor's current equity interest holders.

Quarles & Brady LLP

However, because iStar's plan would comply with the absolute priority rule in section 1129(b) of the Bankruptcy Code, the fact that interest-holders receive nothing on account of their interests is not an obstacle to confirmation.

Because the Debtor's Disclosure Statement cannot be approved and its Plan is not confirmable, and to avoid continued delay in the effective administration of this case, the exclusive period should be terminated.

**WHEREFORE**, iStar respectfully requests the Court to enter an order (i) terminating the Debtor's exclusive right to file a chapter 11 plan; and (ii) granting any other relief that is fair and just.

RESPECTFULLY SUBMITTED this 6th day of January, 2011.

QUARLES & BRADY LLP
One South Church Avenue, Suite1700
Tucson, Arizona 85701

By *<u>/s/ Susan G. Boswell</u>*
Susan G. Boswell

Attorneys for iStar FM Loans LLC

COPIES of the foregoing sent via
electronic or First Class U.S. mail
this 6th day of January, 2011, to:

RCC South, LLC
15333 N. Pima Road, Suite 305
Scottsdale, AZ 85260
Debtor

John J. Hebert, Esq.
POLSINELLI SHUGHART, P.C.
3636 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
jhebert@polsinelli.com
Attorneys for Debtor



Quarles & Brady LLP

Renee S. Shamblin.
United States Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003-1706
renee.s.shamblin@usdoj.com

*/s/ Kelly Webster*

Quarles & Brady LLP



QB\12198969.1