Quarles & Brady LLP
Firm State Bar No. 00443101
One South Church Avenue, Suite 1700
Tucson, AZ 85701-1621
TELEPHONE 520.770.8700
FACSIMILE 520.770.2222
SUSAN.BOSWELL@QUARLES.COM

Susan G. Boswell (AZ Bar #004791)

Attorneys for iStar FM Loans, LLC

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>RCC SOUTH, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:10-bk-23475-SSC<br><br>**iSTAR FM LOANS LLC'S RENEWED OBJECTION TO DEBTOR'S AMENDED DISCLOSURE STATEMENT**<br><br>Hearing Date: March 8, 2011<br>Hearing Time: 11:00 a.m.<br>Hearing Location: Courtroom 701<br>230 N. First Ave.<br>Phoenix, Arizona |

iStar FM Loans LLC ("iStar"), the prepetition senior, secured lender to the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby submits this Renewed Objection (this "Renewed Objection") to the Debtor's Amended Disclosure Statement Relating to Plan of Reorganization [Doc. No. 120] (the "Amended Disclosure Statement"). In support of this Renewed Objection, iStar states as follows:

QB\138887.00002\12694135.1

**Preliminary Statement**

The Debtor's Original Disclosure Statement (as defined below) and Original Plan (as defined below) were nothing more than an attempt by the Debtor's equity holders to retain ownership of the Property (as defined in the Original Objection referenced below) while stripping iStar of its bargained-for rights in connection with its prepetition loan to the Debtor, and not surprisingly, ran afoul of numerous provisions of Sections 1125 and 1129 of the Bankruptcy Code. Following the hearing regarding the Original Disclosure Statement, the Debtor filed the Amended Disclosure Statement and an Amended Plan of Reorganization [Doc. No. 119] (the "Amended Plan"). The Amended Disclosure Statement and Amended Plan modify the Original Disclosure Statement and the Original Plan to include information regarding the effect of a Section 1111(b) election by iStar, disclose that the Debtor's legal fees may exceed the retainer provided to its counsel, disclose some of the assumptions upon which the Debtor's projections are based, and provide a more detailed liquidation analysis, but fail to address the other fatal defects detailed in iStar's Objection to the Original Disclosure Statement [Doc. No. 88] (the "Original Objection").[1] The Amended Disclosure Statement and Amended Plan constitute nothing more than a continuation of the Debtor's improper motives in commencing this bankruptcy case as reflected in the Original Disclosure Statement and the Original Plan: to hinder the finalization of iStar's foreclosure of its mortgage, to impede the sale of the Property, and to retain control over the Property.

**Background**

The Court is aware of the background of this case, including the two-party dispute between the Debtor and iStar that brought it about and that has continued since its commencement. That background was described by iStar in its Motion to Terminate Exclusivity [Doc. No. 83] and in iStar's Original Objection.

---

[1] Capitalized but undefined terms used herein shall have the meanings ascribed thereto in the Original Objection.

On November 24, 2010, the Debtor filed its original Disclosure Statement Relating to Plan of Reorganization [Doc. No. 70] (the "Original Disclosure Statement"), and its original Plan of Reorganization [Doc. No. 69] (the "Original Plan"). On January 12, 2011, iStar filed its Original Objection, and on February 1, 2011, the Court held a hearing on the Debtor's Original Disclosure Statement. The Debtor filed the Amended Disclosure Statement and the Amended Plan on February 18, 2011.

**Bases for Renewed Objection**

While the Debtor heeded the Court's advice and filed an amended disclosure statement and an amended plan, the Debtor did not make any substantive revisions to address the issues detailed in iStar's Original Objection. The Amended Disclosure Statement's and Amended Plan's minor revisions, which do not address the improper classification of claims, impermissible gerrymandering of classes of creditors, violation of the absolute priority rule, and blatant attempt by the Debtor's insiders to retain any equity upside at the expense of bona fide creditors, suffer from the same defects as the Original Disclosure Statement and the Original Plan and further evidence the Debtor's intent to hinder iStar's secured creditor rights and remedies while retaining ownership of the Property and usurping any upside potential of the Property.

Because the Amended Disclosure Statement and Amended Plan do not address the bulk of iStar's objections to the Original Disclosure Statement and Original Plan, rather than restating each of iStar's objections, iStar incorporates in this Renewed Objection each objection in the Original Objection and will only provide a brief summary of those objections and highlight additional issues in the Amended Disclosure Statement and Amended Plan.

**I. THE DEBTOR'S AMENDED DISCLOSURE STATEMENT FAILS TO PROVIDE ADEQUATE INFORMATION AND CANNOT BE APPROVED.**

In order to further the Bankruptcy Code's goal of reorganization while at the same time protecting the rights and interests of creditors, the Bankruptcy Code contains strict requirements that both a disclosure statement and plan of reorganization must meet in order for a debtor to

successfully reorganize. As did the Debtor's Original Disclosure Statement, the Debtor's Amended Disclosure Statement runs roughshod over those requirements and should not be approved because it does not contain adequate information to allow a reasonable investor to make informed judgments about the Amended Plan and describes a plan that is not confirmable.

**A. The Amended Disclosure Statement Lacks Information Regarding the Debtor's Assets, Including Avoidance Actions.**

Similar to the Original Disclosure Statement, the Amended Disclosure Statement (i) fails to provide anything more than a cursory description and valuation of the Debtor's assets, disclosing merely that, based upon a dated April 2010 appraisal, the Debtor believes the value of the Property as of January 2011 to be $47.2 million, (ii) fails to provide more than a cursory discussion of possible avoidance actions and does not disclose whether the Debtor has investigated potential avoidance actions, whether it intends to pursue any such avoidance actions, or the potential value of such actions, and (iii) does not discuss the consequences to the reorganized debtor and its creditors of a default in the payment obligations set forth in the Amended Plan, which is particularly relevant where the Amended Plan contemplates that immediately after confirmation and for the next three years, the Debtor will not be able to make its proposed principal and interest payments to iStar.

**B. The Bidding Procedures in the Amended Disclosure Statement Are Defective and Should Be Revised to Induce an Open and Fair Auction.**

To further the Debtor's owners' goal of retaining all rights and usurping any potential upside of the Property to the detriment of its creditors, the Amended Disclosure Statement and Amended Plan continue to provide that RCCH will purchase the equity interests in the reorganized debtor unless the Court determines that other parties should be allowed to bid. The proposed bidding procedures, however, would favor the Debtor's current owners and chill bidding. In fact, it does not appear that the Debtor made a single revision to the proposed bidding procedures to address the defects detailed in iStar's Original Objection. As a consequence, the

bid procedures, which continue to name the Debtor's current owners as the stalking-horse bidder, reveal that the bidding process is still aimed more at assuring that the Debtor's current owners will be the successful purchasers of the equity interests than encouraging third-party bids. Specifically, the bidding procedures: (1) contain an unmaintainable timeline that requires bidders (other than the Debtor's insiders) to submit to the Debtor, at least 25 days prior to the confirmation hearing, (i) a $1,000,000 cash deposit and (ii) evidence of such bidder's financial wherewithal, ability to operate the reorganized debtor, and having obtained permits and other qualifications to own the Property, (2) exempt RCCH from providing a cash deposit or any evidence of its financial ability to support its bid or ability to operate the reorganized debtor and (3) contemplate an auction for the Debtor's equity rather than the Property in order to frustrate iStar's ability to credit bid for the Property and to limit the potential bidders to the Debtor's current creditors and interest holders.

If approved, the bid procedures in the Amended Disclosure Statement, which favor RCCH to the determinant of the other parties in interest in this case, will have a chilling effect on the bidding, potentially reduce recovery to the estate, merit heightened scrutiny, and should not be approved.

**C.  The Amended Disclosure Statement Does Not Contain Information Sufficient to Assess the Amended Plan's Feasibility or Disclose the Underlying Risks.**

Like the Original Disclosure Statement, the Amended Disclosure Statement fails to provide sufficient information as to the fundamental basis on which the success of the Amended Plan is premised: the hope that the Debtor will be able to secure refinancing in seven years when the balloon payment to iStar under the Amended Plan becomes due. Even though the success of the Amended Plan hinges on the Debtor's ability to obtain refinancing, the Debtor also does not disclose that the Debtor failed to refinance the Property prepetition. Rather, the Debtor retained the self-serving statement that "[t]he issues confronted by the Debtor that led to the bankruptcy filing were the product of market changes, not the Debtor's management or its structure." (Am.

-5-

QB\138887.00002\12694135.1

Disc. Stmt. at 4.) The Amended Disclosure Statement also fails to disclose whether RCCH is financially able to contribute the proposed $5,500,000 in new value and fund the Debtor's expected shortfalls following the effective date.

**D. The Amended Disclosure Statement Does Not Contain Sufficient Information Regarding the Claims Against the Debtor's Estate.**

Similar to the Original Disclosure Statement, the Amended Disclosure Statement does not (i) disclose the number or amount of claims in a class in certain cases or (ii) discuss or provide an estimate of the amount of administrative and priority tax claims.

**E. The Amended Disclosure Statement Does Not Disclose Compensation to Be Paid to the Debtor's Insiders Nor Does it Disclose the Treatment of any Insiders' Claims.**

The Amended Disclosure Statement discloses that RCCH will infuse $5,500,000 in exchange for equity in the reorganized debtor, but does not disclose (i) whether the reorganized debtor will employ any member of RCCH post-confirmation or (ii) the compensation to be paid to CMS for management services to be provided post-confirmation.

**II. THE AMENDED DISCLOSURE STATEMENT SHOULD NOT BE APPROVED BECAUSE THE AMENDED PLAN IS FATALLY FLAWED AND NOT CONFIRMABLE.**

As detailed in the Original Objection, even where a disclosure statement provides adequate information, courts agree that the disclosure statement should not be approved if the plan it describes is patently non-confirmable or fatally flawed. The Debtor did not make any substantive revisions to the Amended Plan, and as such, for the reasons detailed in the Original Objection and highlighted below, the Amended Plan continues to be fatally flawed and unconfirmable, and accordingly, the Amended Disclosure Statement should not be approved.

**A. The Amended Plan Does Not Meet the Requirements of Under Section 1129(a) and Cannot Be Confirmed.**

   **1. The Amended Plan, Which Improperly Gerrymanders Multiple Impaired Classes and Improperly Classifies Unimpaired Claims for the Purpose of Effecting a Cram Down, Does Not Comply with the Applicable Provisions of the Bankruptcy Code as Required by Section 1129(a)(1).**

-6-

QB\138887.00002\12694135.1

1   As detailed in the Original Objection, Section 1122 of the Bankruptcy Code prohibits placing dissimilar claims in the same class. That section also prohibits classifying similar claims in separate classes in order to gerrymander an affirmative vote on a plan. *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991). The Amended Plan continues to impermissibly (i) separate unsecured creditors into multiple classes with disparate treatment and (ii) classify unimpaired classes as impaired in order to effect a cram down, and as a consequence, cannot be confirmed.

Although iStar voiced its concerns regarding the blatant gerrymandering in the Original Plan, other than including a discussion of the treatment of iStar's claim should it make the 1111(b) election, the Debtor did not revise *any* of the classes of claims in the Amended Plan. Instead, the Amended Plan continues to (i) segregate Laser Spine's unsecured claim for unreimbursed improvement costs and expenses and propose to pay such claim at 100% in contrast to the Debtor's other unsecured creditors whom the Amended Plan relegates to Class 5 and proposes to pay only an undisclosed fraction of their claims, (ii) characterize Sonoran Pacific's unsecured claim as secured even though, as the Amended Plan admits, Sonoran Pacific filed a financing statement only the day before the petition date and even though the financing statement was filed in the wrong jurisdiction (a fact the Debtor conspicuously fails to disclose), thereby rendering Sonoran Pacific's improperly perfected claim unsecured, (iii) classify as "impaired" two classes of claims for professionals' fees that, in fact, are not impaired at all, but rather will be paid *in full* on the effective date of the Amended Plan with proceeds of prepetition retainers, and (iv) classify as "impaired claims" the alleged claims of the Debtor's current tenants for whom the Debtor is holding security deposits even though (a) based upon the Debtor's schedules, each of these tenants continues to be a tenant of the Debtor and as such has no claim at this time to any security deposit, and (b) under the Amended Plan, the Debtor plans to assume the leases, which renders any claims of these tenants post-petition administrative claims, entitled to priority under Section 507(a)(1), but not entitled to vote on the Amended Plan. *Barakat v. Life Ins. Co. of Va.*

*(In re Barakat)*, 99 F.3d 1520, 1528 (9th Cir. 1996).

**2. The Amended Plan Was Not Proposed in Good Faith as Required by Section 1129(a)(3).**

As detailed in the Original Objection, the Debtor has not proposed the Amended Plan in good faith because (i) the Amended Plan violates the absolute priority rule, (ii) the Debtor's case has been tainted from the original bad faith filing of the petition, and (iii) the Amended Plan improperly gerrymanders classes and improperly classifies claims to obtain an impaired accepting class to effect a cram down.

**3. The Amended Plan is Not in the Best Interest of Creditors as Required by Section 1129(a)(7).**

As detailed in the Original Objection, if the Debtor was liquidated under chapter 7, iStar, on account of its secured claim, would immediately receive its collateral and would be able to liquidate it in a commercially reasonable and value maximizing way. Instead, under the Amended Plan, the Debtor merely gives iStar a hope note that it hopes it can pay off in seven years. Given the lack of feasibility of such a capricious plan, particularly a plan that contemplates that immediately after confirmation the Debtor will be unable to make its proposed principal and interest payments to iStar, iStar's secured claim would fare better in a chapter 7 liquidation.

**4. Not All of the Impaired Classes Will Accept the Amended Plan as Required by Section 1129(a)(8).**

Class 2-A (iStar's secured claim) and Class 5 (the general unsecured claims) are impaired under the Amended Plan. iStar will vote to reject the Amended Plan in its secured class as well as in the unsecured class to the extent iStar does not make the election under Section 1111(b) of the Bankruptcy Code, resulting in both Class 2-A and Class 5 rejecting the Amended Plan.

QB\138887.00002\12694135.1

### 5. It is Unclear Whether Any Impaired Class Will Accept the Amended Plan as Required by Section 1129(a)(10).

As detailed in the Original Objection, once the improper gerrymandering of classes and improper classification of claims are remedied, the Amended Plan cannot be confirmed because none of the remaining impaired classes will vote in favor of the Amended Plan.

### 6. The Amended Plan is not Feasible as Required by Section 1129(a)(11).

For the reasons set forth in the Original Objection, the Amended Plan is not feasible because, like the Original Plan, it is nothing more than a pipe dream. As disclosed in the Amended Disclosure Statement, the Debtor will be insolvent upon emergence. Moreover, without any evidentiary or even anecdotal support, the Amended Plan proposes to pay iStar's claim in full within seven years of the effective date. The Debtor has not outlined any means of how it plans to seek and receive financing for a loan with a 100% loan to value ratio. Given that the Debtor has failed prior to the Petition Date to refinance iStar's claim, its ability to secure refinancing for its overleveraged real property is anything but certain and more realistically is simply not feasible.

## B. The Amended Plan Is Not Confirmable under Section 1129(b).

The Debtor cannot accomplish a cram down of iStar's claim because the Amended Plan is not fair and equitable with respect to iStar's secured and unsecured claims.

### *a. The Amended Plan's treatment of iStar's secured claim is not fair and equitable.*

Like the Original Plan, the Amended Plan claims to meet the requirements of Section 1129(b)(2)(A)(i) by allegedly providing iStar with the present value amount of iStar's claim. Specifically, to the extent iStar makes an election under Section 1111(b) of the Bankruptcy Code, the Debtor proposes to pay iStar in full, with quarterly payments of principal and interest calculated at the rate of 6.3% per annum and a balloon payment in seven years. However, the Amended Plan contemplates quarterly payments of only $575,000, for total annual payments to

-9-
QB\138887.00002\12694135.1

1 iStar of $2,300,000, reflecting payments at an interest rate at less than half of the proposed 6.3%
2 per annum rate, which is unacceptably below the market rate of interest.

### b. *The Amended Plan's treatment of iStar's general unsecured claim is not fair and equitable.*

The Amended Plan continues to violate the absolute priority rule by allowing equity holders to retain 100% of their property while proposing to pay the general unsecured creditors only an undisclosed fraction of their claims over seven years. The Debtor's equity holders attempt to avail themselves of the new value exception by infusing $5.5 million to the Debtor. However, as detailed in the Original Objection, the proposed equity infusion is not substantial, reasonably equivalent to the value or interest being received, or open to valuation by the market. *In re Suncruz Casinos, LLC*, 298 B.R. 833, 841 n.4 (Bankr. S.D. Fla. 2003). The Debtor's prepetition equity holders cannot have the exclusive right to bid on the equity in the reorganized debtor.

## III. CONCLUSION

The facts have not change since the petition date: this chapter 11 case has been and continues to be simply a two-party dispute between the Debtor and its secured lender, a dispute that would have been resolved in the proper forum, the Arizona state court but for the filing of the petition. The Debtor's proposed Amended Plan underscores the Debtor's motives in filing its petition within hours of iStar's initiating of a proceeding for a receiver: to hinder the finalization of iStar's foreclosure of its mortgage, to impede the sale of the Property, and to retain control of the Property.

## IV. RESERVATION OF RIGHTS

iStar hereby reserves its rights to object to any proposed modifications to the Amended Plan or the Amended Disclosure Statement whether proposed by the Debtor or any other party in interest, and expressly reserves its rights to supplement this Renewed Objection.

QB\138887.00002\12694135.1

**WHEREFORE**, for the reasons stated above, iStar respectfully requests that this Court deny approval of the Amended Disclosure Statement and grant such other and further relief that is just and proper.

RESPECTFULLY SUBMITTED this 4th day of March, 2011.

              QUARLES & BRADY LLP
              One South Church Avenue, Suite 1700
              Tucson, Arizona 85701


              By */s/ Susan G. Boswell*
                Susan G. Boswell

              Attorneys for iStar FM Loans LLC

COPIES of the foregoing sent via electronic or First Class U.S. mail this 8th day of March, 2011, to:

RCC South, LLC
15333 N. Pima Road, Suite 305
Scottsdale, AZ 85260
Debtor

John J. Hebert, Esq.
POLSINELLI SHUGHART, P.C.
3636 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
jhebert@polsinelli.com
Attorneys for Debtor

Elizabeth C. Amorosi, Esq.
United States Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003-1706
elizabeth.c.amorosi@usdoj.gov

/s/ *Kelly Webster*

QB\138887.00002\12694135.1