1  John J. Hebert (#010633)
   Philip R. Rudd (#014026)
2  Wesley D. Ray (#026351)
   **POLSINELLI SHUGHART PC**
3  CityScape Plaza
   One E. Washington, Suite 1200
4  Phoenix, AZ  85004
   Telephone: (602) 650-2000
5  Facsimile: (602) 264-7033
   E-mail:  PhoenixBankruptcyECF@polsinelli.com
6  E-Mail: jhebert@polsinelli.com
   E-Mail: prudd@polsinelli.com
7  E-Mail: wray@polsinelli.com

8  *Attorneys for Debtors*

9        **IN THE UNITED STATES BANKRUPTCY COURT**

10              **THE DISTRICT OF ARIZONA**

11

   In re:                                    | Chapter 11 Proceedings
12
   RCC SOUTH, LLC,                           | Case No.  2:10-bk-23475-SSC
13
              Debtor.                        | **DEBTOR'S MOTION TO FURTHER
14                                           | EXTEND THE EXCLUSIVE PERIOD TO
                                             | OBTAIN ACCEPTANCES OF
15                                           | DEBTOR'S PROPOSED PLAN OF
                                             | REORGANIZATION**
16

17

18        RCC South, LLC ("Debtor" or "RCC South"), debtor and debtor-in-possession, by and

19  through undersigned counsel, hereby submits "Debtor's Motion to Further Extend Exclusive Period

20  to Obtain Acceptances of Debtor's Proposed Plan of Reorganization" ("Motion to Extend") and

21  respectfully requests that the Court extend, for a period of at least 90 days, the Debtor's exclusive

22  period within which to seek and obtain acceptances of the Debtor's proposed Plan of

23  Reorganization (the "Exclusive Solicitation Period").  In support of this Response and Motion to

24  Extend, RCC South states as follows:

25        RCC South filed its voluntary petition under Chapter 11 of the Bankruptcy Code on July 27,

26  2010 (the "Petition Date"), and timely filed its initial proposed "Plan of Reorganization" and

27  accompanying "Disclosure Statement Relating to Plan of Reorganization" on November 24, 2010,

28

                                    1

within its 120 day exclusivity period established by 11 U.S.C. § 1121(b).[1] After several objections to the Disclosure Statement by iStar FM Loans LLC's ("iStar") (which appear to have been simply to delay these proceedings), the Court has now approved the Debtor's "Third Amended Disclosure Statement Relating to Amended Plan of Reorganization" ("Disclosure Statement"), and has set May 24, 2011 at 10:00 a.m. for the initial confirmation hearing regarding the Debtor's "Third Amended Plan of Reorganization" ("Plan").  Pursuant to the Debtor's prior request, the Court has previously extended the Debtor's Exclusive Solicitation Period by 90 days from January 26, 2011 (the date of the hearing on the Debtor's request).  The Debtor hereby requests that the Court extend the Exclusive Solicitation Period for at least an additional 90 days to allow the Debtor to seek and obtain confirmation of its Plan.

Pursuant to § 1121(c)(3), a creditor or other party in interest may file a competing plan of reorganization ***only if*** the Debtor's Plan has not been accepted by each class of impaired claims or interests within 180 days of the Petition Date (*i.e.*, the Exclusive Solicitation Period).  Here, the Debtor's Exclusive Solicitation Period currently expires on April 26, 2011.

Section 1121(d) provides that, upon request of a party-in-interest made within the applicable exclusivity period, and after a notice and an opportunity for a hearing, the Court may increase the Exclusive Solicitation Period, for cause.  Because it does not appear that RCC South will be in a position to obtain acceptances of the proposed amended Plan prior to the expiration of the Exclusive Solicitation Period, and because it is in the bankruptcy estate's and creditors' best interests to allow RCC South additional time to obtain acceptances of the Plan and/or to negotiate a consensual plan of reorganization with its creditors, RCC South requests that the Court extend the Exclusive Solicitation Period, for cause, for a period of at least 90 days.

Courts recognize that the "legislative history of [§ 1121], and its provision for an exclusivity period, bespeak a Congressional intent to facilitate the rehabilitation of debtors in Chapter 11.  The exclusivity period affords the debtor an opportunity to negotiate the settlement of its debts by

---

[1]  Unless otherwise indicated, references to Code sections herein will be to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code").

2790526.1

proposing and soliciting support for its plan of reorganization without interference--in the form of competing plans--from its creditors or others in interest." *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 131 (D.N.J. 1995). *See also*, *In re Hoffinger Industries, Inc.*, 292 B.R. 639, 643 (8th Cir. BAP 2003) ("[T]he legislative history [of § 1121(b)] reveals the intent to facilitate the rehabilitation of debtors in Chapter 11 . . . ."); *Lehigh Valley* at *4 ("'Exclusivity is intended to promote the environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated.'") (citations omitted).

Indeed, the "debtor's exclusive opportunity at plan formulation is a key element in the delicate balance struck by Congress to encourage the consensual development of reorganization plans. *See* S. Rep. No. 989, 95th Cong., 2d Sess. 1188 (1978) (noting exclusivity's role in giving the debtor sufficient leverage by which to negotiate a compromise with its creditors.)  With this exclusive opportunity comes a panoply of rights serving to equalize the relative bargaining position of the debtor and his creditors.  *See Nimmer*, 36 Emory L.J., at 1041 (noting the manner in which exclusivity permits the debtor to influence the terms of reorganization by classifying creditors for payment, voting, and cramdown purposes, as well as the way in which it empowers the debtor to negotiate financial terms)."  *In the Matter of Homestead Partners, Ltd.,*  197 B.R. 706, 719, fn. 14 (Bankr. N.D. Ga. 1996).

Thus, the underlying premise of the exclusivity provisions of § 1121 is to promote RCC South's reorganization by allowing it the exclusive right to negotiate a Plan with its creditors for a period of time.  RCC South has, in good faith, proposed a plan of reorganization that is confirmable and is in the best interests of all creditors and interest holders.  In fact, RCC South believes that the Plan currently on file will engender a good faith discourse between RCC South and iStar's successor, SFI Belmont, LLC ("Belmont") regarding the treatment of its claims, and RCC South is confident that a consensual plan can be reached.

However, if the Court does not extend the Exclusive Solicitation Period, and thereby allows Belmont and/or any other interested creditor to file a competing plan, particularly a liquidating plan, then Belmont will have little incentive to engage in the "consensual development" of a reorganization plan, RCC South will lose its leverage to negotiate a consensual plan, and the

3

1 Congressionally recognized purpose for the grant of exclusivity, specifically, and the goal of

2 Chapter 11, generally, will be lost.

3 Courts have developed a nine-factor test to determine whether "cause" exists for the

4 extension of exclusivity under § 1121(d). *See e.g.*, *In re Henry Mayo Newhall Memorial Hospital*,

5 282 B.R. 444 (9th Cir. BAP 2002); *Hoffinger Industries,* 292 B.R. 639; *In re Dow Corning*

6 *Corporation*, 208 B.R. 661 (Bankr. E.D. Mich. 1997); *In re Express One International, Inc.*, 194

7 B.R. 98 (Bankr. E.D. Tex. 1996). Specifically, these nine factors are: "(1) the size and complexity

8 of the case; (2) the necessity of sufficient time to permit the debtor to negotiate a plan of

9 reorganization and prepare adequate information; (3) the existence of good faith progress towards

10 reorganization; (4) the fact that the debtor is paying its bills as they become due; (5) whether the

11 debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has

12 made progress in negotiations with its creditors; (7) the amount of time which has elapsed in the

13 case; (8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to

14 submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists."

15 *Dow Corning Corporation*, 208 B.R. at 664-65. *See also, Henry Mayo*, 282 B.R. at 452; *Hoffinger*

16 *Industries*, 292 B.R. at 643-644; *Express One,* 194 B.R. at 100. Upon consideration of these nine

17 factors, the Court must ultimately determine whether an extension of exclusivity would "facilitate

18 movement towards a fair and equitable resolution of the case." *Henry Mayo,* 282 B.R. at 453.

19 Here, each of these factors individually weighs in favor of granting an extension of the

20 Exclusive Solicitation Period to allow RCC South the opportunity to seek and obtain, without

21 distraction or competition, acceptances for its Plan. When considered collectively, these factors

22 unequivocally demonstrate that this extension of exclusivity requested by RCC South would aid in

23 moving this case to a fair and equitable resolution. Specifically, the application of the nine factors

24 supports an extension of the Exclusive Solicitation Period for at least 90 days for the following

25 reasons:

26 **(a)    The size and complexity of the case**

27 While the number of creditors in this case is not particularly large, the economic climate in

28

4

which the Debtor is attempting to increase occupancy and formulate its Plan is challenging. Nevertheless, despite the market challenges faced by RCC South and its advisors in this market, RCC South was able to formulate and file a Plan within its exclusivity period and, having put that work in, should be given the Congressionally mandated exclusive period within which to obtain acceptances of its Plan.

**(b) The necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information**

The Debtor has already filed its Plan and has attempted to engage in meaningful discussions with iStar regarding a consensual resolution to iStar's concerns.  However, given iStar's recent transfer of its claim to Belmont, it appears that iStar has been distracted by other concerns and has not been receptive to the Debtor's overtures.  Now that it appears that iStar's transfer of its claim is complete, the Debtor is hopeful that a meaningful dialogue regarding a consensual resolution of Belmont's claim can occur with its successor.  In any event, RCC South deserves the opportunity to engage in such discussions without the spectre of a competing liquidating plan.  Indeed, if Belmont were given the ability to file a competing liquidating plan, all incentives for meaningful negotiations would be lost.

**(c) The existence of good faith progress toward reorganization**

RCC South is making good faith progress toward reorganization as evidenced by the timely filing of the Plan, the approval of the Disclosure Statement, the progress toward confirmation,  and its desire to negotiate with iStar and Belmont .  Furthermore, the Debtor's positive post-petition performance—both in terms of revenue generation and efforts to increase occupancy—demonstrate that the Debtor's prospects for reorganization are significant.

**(d) The fact that the debtor is paying its bills as they become due**

RCC South is paying its bills as they come due.  In fact, there is no allegation to the contrary.  Indeed, RCC South generates significant net operating income and currently has approximately $2.25 million in cash accumulated as of March 30, 2011.

2790526.1

**(e)    Whether the debtor has demonstrated reasonable prospects for filing a viable plan**

As demonstrated above, RCC South has already filed a facially confirmable plan of reorganization and is prepared to seek confirmation of the Plan if an agreement cannot be reached with Belmont.

**(f)    Whether the debtor has made progress in negotiations with its creditors**

RCC South has attempted to negotiate with iStar regarding its Plan treatment without success to date. Nevertheless, as discussed above, RCC South has successfully negotiated a comprehensive cash collateral order with iStar, and is also working other creditors to address their specific concerns, including insuring the continued existence of a viable reorganized debtor with whom they can do business in the future.

**(g)    The amount of time which has elapsed in this case**

With respect to the amount of time that has elapsed in this case, RCC South again notes that it filed its initial Plan within the 120 Exclusivity Period. Further, the Court has set an initial plan confirmation hearing for May 24, 2011, thus ensuring that the Plan confirmation process is moving forward efficiently.

**(h)    Whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands**

RCC South is not seeking an extension of the exclusivity period to pressure any parties to submit to its reorganization demands. Indeed, given iStar's actions in this case, it is readily apparent that iStar, and presumably Belmont, are not, in any manner, submissive or susceptible to any perceived "pressure" by RCC South. Rather, RCC South seeks the extension in order to actively and efficiently pursue a consensual resolution with Belmont and, if not, then to efficiently pursue confirmation of the current Plan.

**(i)    Whether any unresolved contingency exists**

The Debtor is not aware of any unresolved contingencies that need to be resolved before it can seek confirmation of its Plan.

An analysis of all nine *Henry Mayo* factors demonstrates that there is "cause" to extend the

6

Exclusive Solicitation Period. sed on the foregoing, RCC South respectfully requests that the Court

extend the Exclusive Solicitation Period for at least 90 days.

 

       RESPECTFULLY SUBMITTED:  April 25, 2011.

                              POLSINELLI SHUGHART PC

                              By: _____
                                  John J. Hebert
                                  Philip R. Rudd
                                  Wesley D. Ray
                                  One E. Washington, Suite 1200
                                  Phoenix, AZ  85012
                                  *Attorneys for Debtors*

**COPY** of the foregoing mailed (or served via
electronic notification if indicated by an "*")
on April 26, 2011, to:

U.S. TRUSTEE'S OFFICE
230 N. 1st Avenue, Suite 204
Phoenix, AZ  85003

Susan G. Boswell * susan.boswell@quarles.com
QUARLES & BRADY LLP
One South Church Ave., Suite 1700
Tucson, AZ 85701-1621
*Attorneys for iStar FM Loans LLC and
SFI Belmont LLC*

Peter A. Siddiqui * peter.siddiqui@kattenlaw.com
KATEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661-3693
*Attorneys for iStar FM Loans LLC and
SFI Belmont LLC*

Lori A. Lewis * lewisl004@mail.maricopa.gov
MARICOPA COUNTY OFFICE OF GENERAL
  LITIGATION SERVICES
301 W. Jefferson Street, Suite 3200
Phoenix, AZ 85003-2143
*Attorneys for Maricopa County Treasurer*

Twenty Largest Unsecured Creditors

By: _____

2790526.1